South Porto Rico Sugar Company, Demandante y Apelante, *v.* José E. Benedicto, Tesorero de Puerto Rico, Deman· dado y Apelado.

Apelación procedente .de la Corte de Distrito de San Juan, Sección 1ª., en una acción sobre devolución de contribuciones pagadas bajo protesta.

No. 1827.—Resuelto en junio 29, 1918.

Contribuciones Pagadas Bajo Protesta — Pago Voluntario — Prevención de Confiscación.—Es una regla bien establecida de que contribuciones pagadas voluntariamente no pueden ser recobradas y los pagos hechos con conocimiento y libres de compulsión son voluntarios, pero cuando se requiere a una corporación que presente un informe completo de sus ingresos y se le previene la confiscación de su propiedad mediante un sistema inequívoco y completo de cobro de contribuciones, es dudoso que el pago hecho en estas condiciones sea voluntario.

Id.—Id.—Cobro de Contribuciones—Diligencias para el Cobro.—La disyuntiva usada en la sección 1ª. de la ley de 1911 milita contra la teoría de que al decir "inicie cualquier procedimiento o lleve a cabo cualquier diligencia" la legislatura estaba relacionando una forma algo diferente de la misma · idea. Cobrar significa frecuentemente una diligencia fuera de la corte. Llevar a cabo alguna diligencia es una forma más general de expresar cualquier acción para cobrar. "To take step" significa tomar acción o dar algún paso en el asunto.

Id. — Id. — Tentativa de Cobro de Contribuciones Ilegalmente — Reparación o Remedio.—Por la ley de 1911, han sido abolidos todos los remedios en casos de cobro o tentativa de cobro de contribuciones ilegalmente, excepto; los que dispone la misma ley, y una prevención de embargo de propiedad si las contribuciones no son pagadas es una tentativa de cobro y por tanto si la persona prevenida cree que la contribución exigida es injusta o ilegal, su único recurso es pagar la cantidad bajo protesta y demandar al Tesorero para obtener su devolución.

Id.—Id.—Partes—Cesionarios.—Se impusieron contribuciones a otras dos cor-

poraciones y los apelantes, los actuales dueños de las propiedades tasadas, pagaron las contribuciones como cesionarios de aquellas. Se alegó por el demandado que el apelante no era la verdadera parte para demandar la devolución de estas contribuciones y se resolvió por la corte que la objeción carecía de mérito alguno.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. O. B. Frazer.*

Abogado del apelado: *Hon. Howard L. Kern.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

El presente es un caso por contribuciones en grado de apelación interpuesta contra sentencia dictada en virtud de excepción previa general a favor del Gobierno, demandado en la corte inferior.

La apelante es una corporación a que la ley le exige el deber de suministrar al Tesorero los detalles de su activo y negocios de donde el Tesorero o sus agentes hacen la tasación, detalles que en este caso suministró la apelante.

Las contribuciones así impuestas, bajo el supuesto de que sean legales, llegaron a vencer y ser exigibles en virtud de varios artículos del Código Político, entre los cuales se halla el artículo 331, que le impone al contribuyente el deber, sin previo requerimiento, de ir a la oficina del colector y pagar sus contribuciones. Después de vencidas y no satisfechas las contribuciones y dentro de un período de tiempo inmediatamente próximo a la fecha en que la propiedad de la apelante estaría sujeta a embargo, el Tesorero de Puerto Rico, apelado nominal en este caso, le escribió una carta en agosto 25 de 1917, a la apelante, por la que le requería para el pago de las contribuciones y le amenazó con embargar sus propiedades de no pagarse las mismas para el 30 de agosto de 1917. En virtud de dicha carta la apelante pagó sus contribuciones bajo protesta dentro del período de tiempo en que sus bienes no estaban sujetos a embargo e invoca los beneficios que le concede la ley de 9 de marzo de 1911. El Gobierno sostiene que el pago verificado bajo estas condiciones es puramente

voluntario y que la apelante no tiene derecho a la devolución que solicita.

El Juez Presidente Sr. Fuller en el caso de *Cheseborough* v. *U. S.,* 92 U. S. 259, dice: "Está firmemente establecida la regla de que las contribuciones que voluntariamente se pagaren no podrán recobrarse y aquellos pagos verificados con conocimiento y sin que medie compulsión son voluntarios." En el caso de *Guerra* v. *El Tesorero,* 8 D. P. R. 292 (1905), esta corte sostuvo que todo pago de contribuciones verificado sin coacción alguna impide su restitución. En la página 318 de la opinión se dan las reglas citándolas de la obra de Cooley sobre Contribuciones. La teoría era, siguiendo la regla del derecho común (*common law*) que un error de derecho al verificar el pago dejaría a la persona que lo verificara sin recurso legal alguno. La decisión del caso de Guerra se dió bajo el supuesto, sin que se discutiese, que la regla del derecho común de Inglaterra era de aplicación en Puerto Rico, y sin que se examinara el artículo 1796 del Código Civil, cuestión que revisamos en el caso de *Arandes* v. *Báez,* 20 D. P. R., 388. También en el caso de la *American R. R. Co.* v. *Wolkers,* 22 D. P. R. 283, estudiamos con alguna extensión la naturaleza del cuasi-contrato de *solutio indebiti.*

Sin embargo, suponiendo que por razón de haberse adoptado el estatuto americano relativo a contribuciones ha llegado a tener en este respecto fuerza de ley el derecho común de Inglaterra en Puerto Rico, aún así ponemos en duda la cuestión de si el pago que se ha verificado en el presente caso se verificó o no voluntariamente. El primer caso y el más autorizado (*leading*) en que se apoya el Fiscal General y que cita el Juez Presidente de la Corte Suprema de los Estados Unidos, Sr. Fuller, *supra,* es el de *Railroad Company* v. *Commissioners,* 98 U. S. 541, en que dice la corte:

"La verdadera cuestión envuelta en este caso es la de si había o no la inmediata y urgente necesidad para el pago de las contribuciones que implica que el pago se verificase bajo coacción. El tesorero tenía en sus manos un mandamiento que le habría autori-

zado para secuestrar los bienes de la compañía y hacer efectivo el cobro del impuesto. Este mandamiento tenía el carácter de una ejecución trabada contra los bienes de las partes obligadas al pago de las contribuciones según las listas que se le acompañaban, y no se le· dió a las partes ninguna oportunidad para obtener una decisión judicial sobre la cuestión de su responsabilidad. En cuanto a esta clase de casos el Juez Presidente Sr. Shaw expone la regla aplicable en el caso de *Preston* v. *Boston,* 12 Pick. (Mass.) 14, del modo siguiente: 'Por tanto, cuando a una parte que no sea responsable por las contribuciones se le llama perentoriamente para el pago por razón de dicho mandamiento (*warrant*), y no puede salvar su persona o bienes de ninguna otra manera que mediante el pago de la exacción ilegal, puede entonces dicha persona hacer constar que verifica el pago por razón de la coacción y no voluntariamente, y si demostrare que no es responsable por el pago del impuesto puede asimismo recobrarlo por concepto de pago de lo indebido.' Esta, creemos, que es la verdadera doctrina. Pero este caso ni por mucho cae dentro de esta doctrina. El tesorero ni siquiera trató de servirle al contribuyente el mandamiento (*warrant*) que tenía en su poder. Ni siquiera requirió personalmente a la compañía para el pago de las contribuciones, y ciertamente nada se ha hecho de donde pueda deducirse su intención de emplear el mandato legal que tenía en poder para hacer efectiva la recaudación, si es que la supuesta ilegalidad de la exacción se le llegó a poner en su conocimiento. Todo lo que aparece es que en las listas de contribuyentes se le cargó a la compañía el pago de las contribuciones impuestas sobre sus bienes reales y personales radicados en el condado. Después de todo las contribuciones quedaron vencidas y no satisfechas, pero antes de que se practicase alguna diligencia (*step*) activa para hacer efectiva la recaudación del impuesto, la compañía se presentó a la oficina del tesorero, y en el curso ordinario de los negocios pagó por completo todo lo que se le había cargado, acompañando al pago, si bien es cierto, de una protesta en general contra la legalidad de los impuestos y de un aviso de que incoaría un pleito para reintegrarse de la totalidad de la suma de dinero satisfecha. No se hizo especificación alguna de alegada ilegalidad, ni designación alguna de determinada propiedad como indebidamente comprendida en el reparto de las contribuciones.''

Cuando a una corporación se le obliga a presentar un estado completo de su activo y se le amenaza en el día de

mañana con un embargo con arreglo a un completo e ine-
quívoco sistema de recaudación de las contribuciones, tene-
mos que dudar de si un pago así verificado se ha hecho volun-
tariamente. La laboriosidad y penas que ha tenido el Teso-
rero para preparar sus estados de cuentas (*schedules*) son
lo suficiente para convencer a cualquier persona que la ame-
naza de embargo habría de seguir casi inevitablemente y que
la única manera de evitar tener que pagar costas y recargos
y complicaciones y aún quizás una interrupción de los nego-
cios de la compañía era pagando las contribuciones. El ape-
lante en el caso presente pagó sus contribuciones preci-
samente el último día posible antes de que el derecho del
Gobierno para embargar empezara a correr. No podemos
sostener que le era preciso al apelante empeñarse en carreras
de diligencia con el Tesorero precisamente el mismo día en
que podrían embargarse sus propiedades.

En el alegato del Fiscal General más bien se sugiere, que
afirmarse claramente, que la Corte Suprema de Tennesee ha
decidido que el pago de las contribuciones bajo las condi-
ciones de este caso no caería dentro del estatuto de Tennessee
aprobado en 1873, habiéndose tomado nuestros estatutos o
algunas de sus partes principales del Estado de Tennessee.

No hemos encontrado ninguna decisión de Tennessee que
considere algún estatuto parecido al que tenemos ante noso-
tros; en otras palabras, si caería o no el pago que se hiciera
en tales circunstancias fuera de las prescripciones del esta-
tuto de aquel Estado aprobado en 1873. El caso de *Power
Co.* v. *Goodloe,* 131 Tenn. 490, es el que quizás más se acerca
al presente caso. En aquél se le exigió el pago de unos
$1,500 a una corporación como contribución por el privilegio
de hacer negocios en el Estado. Esta forma de exacción,
en el supuesto de que lo sea, aparentemente no era un pago
por el que podía recurrirse a la ley de 1873, puesto que esa
ley no se ha mencionado en la decisión. La corte decidió
que el pago no fué voluntario, pero basándose en principios
establecidos en la *ley común.* La compañía en ese caso no

trató de colocarse dentro del alcance del estatuto, ya porque no tuviese ese derecho o por otras razones.   El caso es autoridad solamente para establecer el principio de la *ley común* en materia de pagos voluntarios.

Los demás casos de Tennessee citados por el Gobierno versaron sobre la recaudación de contribuciones impuestas por los condados y que, respecto de los cuales, dijo la Corte Suprema de Tennessee que no caían dentro del alcance de la ley de 1873.

También hemos examinado un número de casos de la Corte Suprema de los Estados Unidos, y no encontramos que afecten en nada la cuestión debatida.

La mayor parte de nuestra ley ha sido tomada del Estado de Tennessee, pero de una inspección de la misma se hace evidente que toda la ley no ha podido tomarse de ese Estado puesto que nuestra propia ley cambia la ley de *injunction* la que, en sí misma, le da un aspecto un poco diferente a la ley relativa a contribuciones.   Además nosotros no debemos seguir las decisiones de otro Estado ciegamente cuando estamos considerando condiciones locales.   En el caso de Guerra, *supra,* se indicó por esta corte que nuestra legislatura había establecido un sistema completamente nuevo en materia de contribuciones, aboliendo el antiguo procedimiento de lo contencioso-administrativo y haciendo necesaria la apelación a la Junta de Revisión e Igualamiento.   La opinión insiste en que los demandantes en aquel caso pudieron haber ejercitado el recurso de *injunction*.   La ley de 1911 derogó por completo ese derecho, abolió todos los demás remedios salvo el recurso que el propio estatuto prescribe.   Por lo tanto, no ha lugar a la insinuación que se ha hecho de que sus términos han de interpretarse estrictamente en contra del contribuyente.

La principal consideración que debe guiarnos, sin embargo, es la interpretación que deba dársele al propio estatuto, que reza como sigue:

"Sección 1.—En todo caso en que un funcionario, encargado por la ley de recaudar las contribuciones o rentas que se adeuden al Gobierno de Puerto Rico, inicie cualquier procedimiento o lleve a cabo algunas diligencias (*take any steps*) para la recaudación de contribuciones o rentas, bajo la alegación o reclamación hecha por dicho funcionario de que las adeuda alguna persona, la parte contra quien se lleve a efecto el procedimiento, o las diligencias si cree que el cobro es injusto o ilegal, o que se hace contra las disposiciones de cualquier estatuto, pagará dichas contribuciones o rentas bajo protesta.

"Sección 2.—Después que se haya hecho ese pago, el funcionario o recaudador ingresará la cantidad recaudada en el Tesoro de Puerto Rico, dando conocimiento al Tesorero, en el momento del ingreso, de que dicha cantidad se ha pagado bajo protesta.

"Sección 3.—La parte que pague esa contribución bajo protesta podrá, en cualquier momento dentro del plazo improrrogable de treinta días después de haber hecho el pago demandar al mencionado Tesorero ante la corte de jurisdicción competente para ello para obtener la devolución de la citada suma; y si se decidiere, teniendo en cuenta los méritos del caso, que la cantidad fué recaudada injustamente, puesto que el demandante no la adeudaba al Gobierno, el tribunal que conozca del asunto podrá certificar, de acuerdo con las constancias del mismo, que las contribuciones de referencia fueron pagadas sin existir razón para ello, y que deben ser reintegradas, e inmediatamente el Tesorero procederá a su reintegro, dando preferencia a ese pago sobre cualquier otra reclamación que se haya hecho al Tesorero. Cada una de las partes en dicho pleito tendrá el derecho de apelación para ante el Tribunal Supremo.

"Sección 4.—No se dará ningún otro recurso en casos de recaudación ilegal de contribuciones o rentas, o en casos de tentativas para recaudar ilegalmente contribuciones o rentas.

"Sección 5.—En ningún caso se expedirá auto alguno para impedir la recaudación de contribuciones o rentas devengadas, o para obstaculizar y demorar esa recaudación, ya se trate de un *supersedeas,* un auto prohibitorio, o cualquier otro auto o procedimiento; y en todos los casos en que, por cualquier motivo, una persona alegue que la contribución que se le ha cobrado fué recaudada injusta o ilegalmente, el recurso que ha de utilizar dicha persona es el que queda determinado antes, y ningún otro.

"Sección 6.—La sección 12 de la ley de 8 de marzo de 1906 titulada 'Ley para definir los *injunctions,* aprobada en 1 de marzo de

1902, y todas las demás que se opongan a la presente,' queda modificada en la forma siguiente:

" 'Sección 12.—Podrá concederse un *injunction* a petición de El Pueblo de Puerto Rico, para prohibir y suprimir la conservación y mantenimiento de un perjuicio común (*common nuisance*). La petición será jurada por el fiscal del distrito en que el perjuicio común (*common nuisance*) exista, o por el Attorney General, según su leal saber y entender, y no será necesaria ninguna fianza.'

"Sección 7.—Esta Ley empezará a regir inmediatamente después de su aprobación.''

Ante nosotros tuvimos el estatuto en el caso de *Ensenada Estates* v. *Hill*, 24 D. P. R. 491. En las páginas 513 y siguientes consideramos la limitación de la máxima *nositur a sociis*. Se puede conocer la significación de un término por los de su contexto cuando no la revelan sus propios términos. La disyuntiva del primer párrafo de la ley milita en contra de la teoría de que la legislatura al decir "inicie cualquier procedimiento" o "lleve a cabo algunas diligencias" (*take any steps*) asociaba una forma un poco diferente del mismo concepto.

El *recaudar* o *cobrar* significa frecuentemente un cobro extrajudicial. *People* v. *Reis*, 18 Pac. 313; 11 C. J. 967. "*To take any steps*" es el modo más corriente de expresar cualquier clase de gestión o cobro. "*To take any steps*" equivale a hacer gestiones, moverse en el asunto. Webster's New International Dictionary, Century Dictionary, p. 6164, No. 35; y es bastante curioso, pues esa frase casi necesariamente se ha definido en la cita que hemos hecho del caso de *Railroad Company* v. *Commissioners*, 98 U. S. 545, *supra*. Dice la Corte por conducto del Juez Waite: "Después que todas las contribuciones lleguen a vencer y no sean satisfechas con arreglo a la ley, pero antes de que se den algunos pasos de cualquier naturaleza para hacer efectiva la recaudación. La palabra "*steps*" se emplea evidentemente del modo más corriente como significativa de *gestiones* (*action*).

La sección 4 de la Ley No. 35 de 1911 es un precepto de fecha reciente aprobado por la legislatura de que no habrá

otro recurso en casos de recaudación o *de tentativas para recaudar rentas ilegalmente*. Si lo que en este caso se hizo no fué una tentativa de recaudación no fué nada en absoluto.

La sección 5 vuelve a prohibir todo recurso legal que no sea el que el estatuto prescribe y dice que en todos los casos el recurso que se dará es el que anteriormente se dispone. Si alguna duda quedase respecto a la definición original en la sección 1ª., aquellos casos para los cuales anteriormente se hayan obtenido acciones por la presente caen dentro del alcance del precepto legislativo. La primera impresión del estatuto, su significación de ordinario sentido común, estuvo ante nosotros en el caso de *Ensenada Estates* v. *Hill, supra.*. Esta corte dijo y aparece de la página 514 lo siguiente:

"Las palabras de la ley son completamente claras y sencillas y y de dárseles la significación que ordinariamente se les da no dejan lugar a dudas respecto al fin que tuvo presente el legislador. Cualquier tentativa que se haga para dar una explicación mejor al claro lenguaje del texto sin extenderse en la misma, puede resultar en una restricción tal de su significado evidente a todas luces que equivalga a una eliminación.

"La sección 1ª. se refiere a todos los casos en que el Gobierno trata de recaudar contribuciones que se alegan o reclaman como debidas, y exige que si el supuesto deudor cree que el cobro es injusto o ilegal, o que se hace contra las disposiciones de cualquier estatuto, pagará dichas contribuciones bajo protesta. Luego el contribuyente puede establecer una acción para obtener la devolución de la suma así pagada, y si se decidiere, teniendo en cuenta los méritos del caso que la cantidad fué injustamente recaudada, porque no se adeudaba, el tribunal sentenciador puede certificar que dichas contribuciones fueron pagadas sin existir razón para ello y que deben ser reintegradas e inmediatamente el Tesorero procederá a su reintegro. Y finalmente, en todos los casos en que por cualquier motivo una persona alegue que la contribución que se le ha cobrado fué recaudada injusta e ilegalmente, el recurso que ha de utilizar dicha persona es el que queda determinado antes, y ningún otro. La legislatura le dice, por tanto, al contribuyente: en adelante usted no impedirá, detendrá o demorará el cobro de ninguna renta que se alegue o reclame como

debida al Gobierno por injusta o ilegal que pueda ser, sino que usted la pagará ya que se deba o no sin tener en cuenta alguna o toda cuestión de derecho y de justicia; y como compensación por la pérdida de sus remedios en equidad y por la molestia que lleva consigo ese pago obligatorio, entonces puede usted probar, si puede hacerlo, que teniendo en cuenta los méritos del caso dicha cantidad fué recaudada injusta o ilegalmente puesto que no se debía, y debe ser reintegrada, en cuyo caso la corte así lo certificará y el Tesorero procederá a hacer su reintegro.''

Aunque exactamente la misma cuestión ahora sometida a nuestra consideración no fué levantada en aquel caso no encontramos razón alguna para cambiar nuestra primitiva impresión respecto de lo que es una ley clara.

Si la ley fuese dudosa en alguna sentido, su interpretación quedaría asistida por los términos de su título, que son como sigue: ''Ley disponiendo el pago de contribuciones bajo protesta, estableciendo un procedimiento para exigir la devolución de las mismas, y para otros fines.''

En otras palabras, esta ley, muy al contrario de lo que sostiene el Gobierno, es una ley para el pago de contribuciones bajo protesta y para la devolución de las mismas.

Por lo tanto, es inecesario considerar el hecho de que el pago se hizo antes de que la propiedad pudiera en efecto embargarse. La contribución, de ser legal, ya había vencido.

También sostiene el Gobierno que la apelante no es la persona competente para exigir judicialmente el reintegro de estas contribuciones. Aparece que éstas se impusieron contra dos corporaciones distintas a la que las reclama, pero también aparece que la apelante pagó las contribuciones como cesionaria de estas dos corporaciones y que es la actual dueña de los bienes sobre los que se pretende imponer la contribución. Por tanto, no puede prevalecer la objeción presentada.

Es de revocarse la sentencia recurrida y devolverse el

caso para alteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la sentencia recurrida y devuelto el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. del Toro firmó conforme con la sentencia.