265 F.2d 136
 AMERICAN-FOREIGN STEAMSHIP CORPORATION, Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
STOCKARD STEAMSHIP CORPORATION, Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
A. H. BULL STEAMSHIP CO., Bull-Insular Line, Inc., Baltimore
Insular Line, Inc., Libelants-Appellants,
v.
UNITED STATES of America, Respondent-Appellee.
NEW YORK AND CUBA MAIL STEAMSHIP COMPANY, Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
DICHMANN, WRIGHT & PUGH, Inc., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
POLARUS STEAMSHIP CO., Inc., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
A. L. BURBANK & COMPANY, Ltd., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
T. J. STEVENSON & CO., Inc., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
NORTH ATLANTIC AND GULF STEAMSHIP CO., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
LUCKENBACH STEAMSHIP COMPANY, Inc., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
BLIDBERG ROTHCHILD CO., Inc., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
FALL RIVER NAVIGATION CO., Libelant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 Nos. 126, 135, 214-225, Dockets 24190, 24200, 24291, 24292,
24283-24289, 24400- 24402.
 United States Court of Appeals Second Circuit.
 Argued Jan. 15, 1957.
Original Opinion Filed Sept. 25, 1957.
On Rehearing before Court en banc,
Petition for Further Rehearing en banc Denied March 26, 1959.
Decided July 28, 1958.
 
 J. Franklin Fort, Kominers & Fort, Washington, D.C. (John Cunningham, Israel Convisser, Washington, D.C., and Edwin K. Reid, New York City, of counsel), for all libelants-appellants except American-Foreign S.S. Corp.
 Burlingham, Hupper & Kennedy, New York City, of counsel, for North Atlantic & Gulf Steamship Co. and Luckenbach Steamship Co.
 Cravath, Swaine & Moore, New York City, of counsel for New York & Cuba Mail S.S. Co.
 Hill, Betts & Nash, New York City, of counsel for Dichmann, Wright & Pugh, Inc.
 Kirlin, Campbell & Keating, New York City, of counsel for A. H. Bull S.S. Co., etc.
 Lester Levin, New York City, of counsel for Polarus S.S. Co., Inc., A. L. Burbank & Co., Ltd., and T. J. Stevenson & Co., Inc.
 Zock, Petrie, Sheneman & Reid, New York City, of counsel for Stockard S.S Corp., Blidberg Rothchild Co., Inc., and Fall River Nav. Co. (Roberts & McInnis, Washington, D.C., Francis J. O'Brien, New York City, Charles B. McInnis, and Roger H. Muzzall, Washington, D.C., of counsel for Fall River Nav. Co.
 Arthur M. Becker, Washington, D.C., Foley, James & Conran, New York City (Becker & Maguire and Gerald B. Greenwald, Washington, D.C., of counsel), for libelant-appellant American-Foreign S.S. Corp.
 Benjamin H. Berman, Atty. in Charge, New York Office, Admiralty & Shipping Section, Dept. of Justice, New York City (George Cocharan Doub, Asst. Atty. Gen., Arthur H. Christy, U.S. Atty., S.D.N.Y., New York City, Paul W. Williams, U.S. Atty., S.D.N.Y., New York City, Leavenworth Colby, Chief, Admiralty & Shipping Section, Dept. of Justice, Washington, D.C., and William E. Gwatkin, Atty., admiralty & Shipping Section, Dept. of Justice, Washington, D.C., on the briefs), for the United States.
 Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.
 HINCKS, Circuit Judge.
 
 
 1
 Each of the libelants herein chartered ships from the Government pursuant to the Merchant Ship Sales Act, 50 U.S.C.A.Appendix, 1735 et seq., and agreed to various terms of a standard charter, which made the rental price depend in part on the amount of the profit realized by the charterer. The libelants claim that the Maritime Commission, contrary to provisions of the Act, exacted from them too great a percentage of the profits and these actions were brought under the Suits in Admiralty Act, 46 U.S.C.A. 741 et seq., to recover the illegally collected amounts. The foregoing cause of action is asserted in each of the libels. In several of the cases some payments were made by the shippers after redelivery of the ships and within two years of the filing of the libel. And some of the libelants sought to obtain refund of certain alleged overcharges caused by the Commission's refusal to allow certain expense deductions and its refusal to permit cumulative accounting under certain circumstances.[1]
 
 
 2
 In each case, the Government moved to dismiss the libels because of lack of jurisdiction, on the ground that all of the claims stated therein were barred by the two-year limitation of the Suits in Admiralty Act, 46 U.S.C.A. 745. As to this, the Government's position was that the causes of action accrued as of the time the libelants returned their ships to the Commission, and that this 'redelivery' date in all cases was more than two years prior to the commencement of suit. We append to this opinion a chart showing the dates pleaded in the libels and, in some cases, in the Government's exceptive allegations. Since the dates in the exceptive allegations were not challenged, we accept them as true.
 
 
 3
 Judge Palmieri, in an opinion reported at D.C., 141 F.Supp. 58, dismissed all the libels, except those of Blidberg Rothchild and Fall River Navigation Co., and denied leave to amend because, however pleaded, the actions were time-barred. Judge Herlands, in a memorandum opinion set out in the margin,[2] dismissed the Blidberg Rothchild and Fall River Navigation Co. libels for the same reason. The sole question presented on this appeal is whether it was correct to dismiss the libels and deny amendment because jurisdiction was lacking.
 
 
 4
 Before dealing with this question, we note that we are without appellate jurisdiction over the Dichmann, Wright & Pugh appeal. Dichmann, in its reply brief, conceded that, since the second count of its libel was still pending in the District Court, its appeal from the dismissal of the first and third counts was interlocutory. It cited 28 U.S.C.A. 1292(3) as express statutory authority for us to entertain this appeal. But our authority to entertain interlocutory admiralty appeals is limited by the requirement of 28 U.S.C.A. 2107 that the appeal be filed within 15 days after entry of judgment. Here, the judgment appealed from was filed on May 22, 1956 and the appeal was not filed until August 10, 1956,-- more than 15 days later. The appeal therefore is too late, and must be dismissed. The Fanny D (Eggers v. Southern Steamship Co.), 5 Cir., 112 F.2d 347, certiorari denied National Union Fire Ins. Co. v. Eggers, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed, 438; Blaske v. Dick, 7 Cir., 126 F.2d 96, 98.
 
 
 5
 In the appeals which are properly before us, the following facts are pertinent to the issues raised. The Maritime Commission in 1946 was authorized by statute to charter vessels owned by the Government. The statute, 50 U.S.C.A.Appendix, 1735 et seq., provided for rental rates in 1738, which incorporated by reference 709(a) of the Merchant Marine Act, 46 U.S.C.A. 1199(a). This latter section provided that every charter executed by the Maritime Commission should contain provision that, whenever the charterer's adjusted profits exceed a certain amount, the charterer must pay as additional charter hire one-half of the profits in excess of a 10% return of employed capital. The Commission, claiming that 709(a) merely set a minimum additional charter hire, proceeded to charter its ships pursuant to charters which provided a sliding scale for the additional charter hire depending on the amount of profit per day in excess of the 10% return. The libelants, as charterers, agreed to progressive rates which allowed the Commission to recapture 90% of the profits in excess of $300 per day, per vessel, above the 10% return, and made payments accordingly.
 
 
 6
 However, the libelants objected to the sliding scale rate as illegal before making payment thereunder and obtained from the Maritime Commission the assurance that payments of charter hire were to be deemed preliminary and subject to adjustment until final audit. In recognition of this the Commission inserted Clause 13 in the charters.[3] In addition, the libelants claim that all parties to the charters operated under the assumption that, until final audit, charter hire payments were merely preliminary. To support this, they point to Commission regulations, 46 CFR 299.31(k)(1), 299.37-2(a)(1), (2) and (b)(3), to instructions such as the one set out in the margin,[4] and to the Commission's routine procedure, established pursuant to instructions from the General Accounting Office, of depositing the additional charter hire in an 'unearned money' account rather than in the 'miscellaneous receipts' account required by statute, 50 U.S.C.A.Appendix, 1745(d).
 
 
 7
 The libelants argue that the cause of action for return of charter hire illegally exacted accrued as of the date of final audit, or-- at the earliest-- when the last payment or credit entry in their account with the Commission was made. In all cases this would avoid the time bar. The Government contends that the statute commenced running as of the date when each libelant redelivered the chartered vessels to the Commission. If this be so, these libels would be time-barred.
 
 
 8
 We agree with the judges below that the basic issues in this appeal were decided adversely to the appellants in our decision in Sword Line v. United States, 2 Cir., 228 F.2d 344, affirmed on petition for rehearing 230 F.2d 75, affirmed as to jurisdiction 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493, and in American Eastern Corp. v. United States, 133 F.Supp. 11, affirmed 2 Cir., 231 F.2d 664, certiorari denied 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497.
 
 
 9
 The Sword Line case held that a cause of action, such as that presented in these appeals, accrues as of the redelivery date. See 228 F.2d 344, 347; 230 F.2d 75, 76. In so holding, the majority in that case carefully considered and explicitly rejected the argument that the effect of Charter Clause 13 was to delay the commencement of the running of the statute until final audit. This was also the holding in American Eastern, supra, 133 F.Supp. at page 15.
 
 
 10
 To avoid the impact of these decisions, the appellants have restated their theories but even as restated most of them were presented and rejected in Sword Line and American Eastern. The 'mutual account' or 'open account' theory as advanced by Judge L. Hand was rejected by his colleagues in Sword Line, 228 F.2d at page 347, and by the court in American Eastern, 133 F.Supp. at page 15. Nor were the preliminary charter hire payments a 'trust fund' because they were kept in a special account. This argument was forcefully brought to the court's attention in the American Eastern appeal by a letter from appellants' counsel which thoroughly discussed the point and cited the court to Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. In its petition for rehearing in Sword Line, the appellant made essentially the same argument but in somewhat more general terms.
 
 
 11
 There remains the contention, forcefully urged by those appellants to whom it is available, that, even if suits for refund of payments made prior to redelivery of the ships are time-barred, the court had jurisdiction over those libels which demanded refund of post-redelivery payments to the Commission which were made within two years of the filing of the libel. (For libels so situated, see the Appendix hereto.) The Government replies that the libelants cannot now demand refund since such payments were voluntary, citing Railroad Co. v. Commissioners, 98 U.S. 541, 25 L.Ed. 196, and Cunard S.S. Co. v. Elting, 2 Cir., 97 F.2d 373, and that, in any event, since the libelants accepted the ships on the Commission's terms, they are now estopped from disputing them, citing Commissioner of Internal Rev. v. National Lead Co., 2 Cir., 230 F.2d 161, affirmed on other grounds 352 U.S. 313, 77 S.Ct. 347, 1 L.Ed.2d 352.
 
 
 12
 This point was unmistakably presented and was disposed of without discussion by another panel of this court in Sword Line in an opinion which did not explain why the court lacked jurisdiction of the claim for recovery of the post-redelivery payments. However, the rationale of the opinion in that case which was equally applicable to payments made before and after redelivery, and the rationale of American Eastern, required the orders of dismissal now before us on review. Indeed, in its briefs and its petition for rehearing in Sword Line, the libelant pointed out that after redelivery and within two years prior to the libel it had paid to the Commission $660,000, which it contended was additional charter hire. Yet the court held that there was no jurisdiction to entertain the claim.
 
 
 13
 Apparently the only point now pressed which was not determined in Sword Line or American Eastern was raised in the Blidberg libel. This concerned a claim for expenses incurred in repairing latent defects which existed when the ships were received by Blidberg. But this claim was obviously in existence, at the very latest, when the ships were redelivered. Since the libels were not filed within two years of the redelivery these claims are barred. 46 U.S.C.A. 745.
 
 
 14
 If the subject-matter of these appeals were res nova, we are by no means sure that our dispositions would coincide with those made by the majority opinion in Sword Line and by American Eastern. However, we will not overrule these recent decisions of other panels of the court. On the authority of Sword Line and American Eastern we hold that these libels also were barred.
 
 
 15
 Accordingly, the decrees appealed from are affirmed except the Dichmann, Wright & Pugh, Inc. appeal which is dismissed.
 
 
 16
 APPENDIX
 Charter
 Docket Libel Contracts
 No. Name of Libelant Filed Signed
--------------------------------------------------------------
 24190 American-Foreign 11/24/54 6/ 6/46
 S.S. Corp. 9/ 2/46
 24200 Stockard S.S. Corp. 10/ 5/54 9/ 2/46
 8/21/50
 1/ 5/51
 24283 ** Dichmann, Wright & 5/13/54 9/ 2/46
 Pugh, Inc. 10/ 5/46
 24284 Polarus S.S. Co., Inc. 11/10/54 10/18/46
 24285 A.L. Burbank & Co., 5/27/54 9/26/46
 Ltd. 9/ 3/46
 24286 T.J. Stevenson & 3/16/55 11/18/46
 Co., Inc.
 24287 North Atl. & Gulf 12/16/54 10/31/46
 S.S. Co.
 24288 Luckenbach S.S. Co., 12/20/55 7/12/46
 Inc. 9/24/46
 1/ 5/51
 24289 North Atl. & Gulf 10/21/54 7/17/51
 S.S. Corp. 4/ 2/52
 24291 A. H. Bull S.S. Corp. 4/22/54 4/21/47
 9/ 2/46
 9/13/46
 24292 New York & Cuba 1/27/55 11/12/46
 Mail S.S. Co. 11/25/46
 10/26/50
 11/28/50
 24400 Blidberg Rothchild 4/13/56 6/25/46
 Co., Inc. 9/ 4/46
 24401 Fall River 2/14/56 6/ 1/46
 Navigation Co. 9/ 2/46
 24402 Fall River 2/14/56 6/ 1/46
 Navigation Co. 9/ 2/46
 ------------
TABLE CONTINUED
 Date of Date of
Last Ship Last Last Payment Last Item
Redelivered Final Audit to Maritime in Account
----------------------------------------------------------------
12/28/49 10/11/54 * 9/21/53 9/21/53
 2/11/52 * 5/20/55 6/23/53 12/21/53
 (supplement)
12/10/49 * 12/12/52 2/26/53 11/20/53
12/ 7/49 * 11/13/52 4/ 6/53 *** 7/29/54
 4/17/48 * 11/ 9/54 3/16/53 4/25/55
12/ 2/49 * 9/ 1/53 11/27/53 6/10/54
 6/10/48 * None yet 5/18/53 5/17/54
 4/23/51 12/22/53 No payments 12/14/53
 No audit yet on after 12/20/53
 1951 contract
 No audit yet for
 12/54 contracts
 2/26/48 * 5/12/52 8/18/53 9/29/53
 5/28/52 * 10/ 4/54 9/24/53 12 7/54
11/28/49 4/16/54 8/19/55 *** 11/ 7/56
10/28/49 3/10/54 No payments 6/ 9/52
 after 2/14/54
10/28/49 3/10/54 No payments 3/10/54
 after 2/14/54
* Information obtained from exceptive allegations.
** This covers only first cause of action.
*** Setoff; not actual payment.
 
 
 17
 On Rehearing before the Court, en banc.
 
 
 18
 Before CLARK, Chief Judge, and MEDINA, HINCKS, WATERMAN and MOORE, Circuit Judges.
 
 
 19
 HINCKS, Circuit Judge.
 
 
 20
 Pursuant to libelants' petitions after the filing of our first opinion in this case, this court on December 19, 1957 granted rehearing en banc[5] which was limited to the question of determining the proper commencement date of the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C.A. 745. Our earlier opinion of September 25, 1957 is hereby withdrawn.
 
 
 21
 Each of the libelants herein chartered ships from the Government pursuant to the Merchant Ship Sales Act, 50 U.S.C.A. Appendix 1735 et seq., and agreed to various terms of a standard charter, which made the rental price depend in part on the amount of the profit realized by the charterer. The libelants claim that the Maritime Commission, contrary to provisions of the Act, insisted on including in the standard charter provisions calling for excessive additional charter hire and these actions were brought under the Suits in Admiralty Act, 46 U.S.C.A. 741 et seq., to recover such excess.
 
 
 22
 In each case, the Government moved to dismiss the libels because of lack of jurisdiction, on the ground that all of the claims stated therein were barred by the two-year limitation of the Suits in Admiralty Act, 46 U.S.C.A. 745. As to this, the Government's position was that the causes of action accrued as of the time the libelants returned their ships to the Commission, and that this 'redelivery' date in all cases was more than two years prior to the commencement of suit.
 
 
 23
 Judge Palmieri, in an opinion reported at 141 F.Supp. 58, dismissed all the libels, except those of Blidberg Rothchild and Fall River Navigation Co., and denied leave to amend because, however pleaded, the actions were time-barred.[6] Judge Herlands, in an unreported memorandum opinion, dismissed the Blidberg Rothchild and Fall River Navigation Co. libels for the same reason. The sole question presented on this appeal is whether it was correct to dismiss the libels and deny amendment because, for failure of timely institution of the actions, jurisdiction was lacking.
 
 
 24
 Before dealing with this question, we note that we are without appellate jurisdiction over the Dichmann, Wright & Pugh appeal. Dichmann, in its original reply brief, conceded that, since the second count of its libel was still pending in the District Court, its appeal from the dismissal of the first and third counts was interlocutory. It cited 28 U.S.C.A. 1292(3) as express statutory authority for us to entertain this appeal. But our authority to entertain interlocutory admiralty appeals is limited by the requirement of 28 U.S.C.A. 2107 that the appeal be filed within 15 days after entry of judgment. Here, the judgment appealed from was filed on May 22, 1956 and the appeal was not filed until August 10, 1956. The appeal therefore is too late, and must be dismissed. The Fanny D (Eggers v. Southern Steamship Co.), 5 Cir., 112 F.2d 347, certiorari denied National Union Fire Ins. Co. v. Eggers, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438; Blaske v. Dick, 7 Cir., 126 F.2d 96, 98.
 
 
 25
 In the appeals which are properly before us, the following facts are pertinent to the issues raised. The Maritime Commission in 1946 was authorized by statute to charter vessels owned by the Government. The statute, 50 U.S.C.A.Appendix 1735 et seq., provided for rental rates in 1738, which incorporated by reference 709(a) of the Merchant Marine Act, 46 U.S.C.A. 1199(a). This latter section provided that every charter executed by the Maritime Commission should contain provision that, whenever the charterer's adjusted profits exceed a certain amount, the charterer must pay as additional charter hire one-half of the profits in excess of a 10% return of employed capital. The Commission, claiming that 709(a) merely set a minimum additional charter hire, proceeded to charter its ships pursuant to charters, Clause 13[7] of which provided a sliding scale for the additional charter hire depending on the amount of profit per day in excess of the 10% return. Under these progressive rates the Commission was allowed to recapture as much as 90% of the profits in excess of $300 per day, per vessel, above the 10% return.
 
 
 26
 However, the libelants claim that before entering into such charters and before making payments thereunder they objected to the sliding scale rates as contrary to 709(a) and hence illegal; that by reason of their objections the Maritime Commission assured them that payments of additional charter hire would be deemed preliminary and subject to adjustment until final audit; and that, as a result of this understanding the final paragraph of Clause 13 was inserted in the charters. In addition, the libelants claim that all parties to the charters operated under the assumption that, until final audit, charter hire payments were merely preliminary. In support of this position, they point to Commission regulations, 46 C.F.R. 299.31(k)(1), 299.37-2(a)(1), (2) and (b)(3), to instructions such as the one set out in the margin,[8] and to the Commission's routine procedure, established pursuant to instructions from the General Accounting Office, of depositing the additional charter hire in an 'unearned money' account rather than in the 'miscellaneous receipts' account required by statute, 50 U.S.C.A.Appendix 1745(d).
 
 
 27
 The Government now contends that Clause 13 of the charter is irrelevant to the limitations question and that the statute, of necessity, began to run on the date of payment with the result that all of the libels herein involving payments made before the date of redelivery are timebarred. The Government also argues that jurisdiction is lacking over libels for recovery of payments made after redelivery even if made within two years of suit because such payments as a matter of law were 'voluntary' within the meaning of Railroad Co. v. Commissioners, 98 U.S. 541, 25 L.Ed. 196; Cunard S.S. Co. v. Elting, 2 Cir., 97 F.2d 373. Since these contentions have been raised by exceptive allegations the Government, in reliance on comment in The Ira M. Hedges, 218 U.S. 264, 270, 31 S.Ct. 17, 54 L.Ed. 1039, is contending that the voluntary character of the payments, for which recovery is sought, deprives the court of jurisdiction.[9] The libelants, on the other hand, have placed their reliance on Clause 13, and maintain that under that clause no breach of contract could possibly have occurred until, after 'final audit,' the Government refused to refund moneys claimed to be due the libelants. In the alternative, the libelants urge recovery on a mutual accounts theory according to which the statute of limitations would begin to run from the date of the last payment or credit entry in the account.
 
 
 28
 The issues before us have been presented to this court twice before, although in not such comprehensive and forthright manner as in the present case. In Sword Line, Inc., v. United States, 2 Cir., 228 F.2d 344, and in the opinion therein on rehearing, 230 F.2d 75, affirmed on other grounds 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493,[10] the limitations issue, which had not been raised in the district court, was presented on appeal for the first time by the United States as appellee. This issue was one of three complex issues raised in the case. The court was in agreement in holding that the libelant's action had no merit because barred by a bankruptcy composition, but on the issue of limitations the majority, as pointed out on rehearing, held that the action accrued upon the date of the payment for which recovery was sought. 230 F.2d at page 76. Judge Hand's mutual accounts approach was rejected. In American Eastern Corp. v. United States, D.C., 133 F.Supp. 11, affirmed 2 Cir., 231 F.2d 664, certiorari denied 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497, we relied upon the Sword Line ruling and affirmed the lower court without opinion.
 
 
 29
 The panel of this court which delivered the original opinion on these appeals-- the opinion now withdrawn-- felt unwilling to depart from the authority of those cases. But now that the court on rehearing has undertaken to proceed en banc, we feel under somewhat less constraint from our past decisions and consider anew, on the intrinsic merits, the issues now before us.
 
 
 30
 We have come to the conclusion that the rights of the parties to these charters, so far as additional charter hire is concerned, are governed by Clause 13. This is not the case, frequently occurring, in which money has been collected by the Government by virtue of a statutory direction. The statute involved in this case does not of itself authorize or require payments to the Government. Title 46 U.S.C.A. 1199(a) declares, 'every charther made by the Commission * * * shall provide * * *' Therefore, unless the parties enter into a charter there can be no liability created under 1199(a). Accordingly, we must look to the charter and specifically to Clause 13 if we are to ascertain the rights and liabilities of the parties and evaluate the libelants' contentions that the Commission breached the charter and that the breach occurred not until it failed to return funds to the libelants after final audit and due demand.
 
 
 31
 When the libelants raised their contentions below, and in earlier cases, the Government's position was that Clause 13 was entirely irrelevant. Consequently, the Government never attacked the libelants' asserted interpretation of that clause: it filed no answers and its exceptive allegations raised no issues of fact. On this rehearing, however, for the first time the Government argues that even if Clause 13 is controlling on the limitations issue the libelants are misinterpreting the language of that clause: it now for the first time suggests that 'each final audit' in Clause 13 means each annual audit. But this dispute as to interpretation is plainly one that now appears to involve questions of fact on which extrinsic evidence is admissible. The parties never had occasion to present such evidence. And the particular problem of interpretation has never been passed upon by any judge in these cases or in any other that has been brought to our attention.
 
 
 32
 As to the interpretation of Clause 13 and its effect upon claims for the recovery of additional charter hire, we have been presented on appeal with many arguments based on facts alleged in briefs and affidavits, some but not all of which were part of the record below. But since the issue was not raised below, probably because the Government thought it irrelevant under the Sword Line decision, we think the cases should be remanded and the issue should be submitted to the trial judges for findings and determination after giving the Government opportunity to raise such issues of fact as may be desired. This is a case in which parol evidence is admissible on the disputed issue as to interpretation of the charters, Corbin on Contracts, Vol. 3, 579, and we think we should wait until the relevant record of fact below has been made and completed before we commit the court to any particular interpretation. Our preview, on this appeal, of the contentions of the parties as to Clause 13 leads us to suggest that issues framed thereby are peculiarly appropriate for determination on such evidence as the parties may offer rather than on affidavits. Pacific-Atlantic Steamship Company v. United States, D.C.D.Del. 1955, 127 F.Supp. 931. Of course the burden of proving jurisdiction remains throughout on the libelants. Corporation of The Royal Exchange Assurance v. United States, 2 Cir., 75 F.2d 478. But we think the text of Clause 13 is an adequate, prima facie, showing of jurisdiction in the absence of pleading and proof by the Government that the libelants' interpretation of Clause 13 is incorrect.
 
 
 33
 The true intent of Clause 13 having been ascertained, it can then readily be determined whether these suits in so far as they seek recovery of additional charter hire have been brought within the two-year limitation. And any suit thus found to have been timely brought should then, of course, be heard and decided on the merits.
 
 
 34
 Certain of the libels also include claims not directly based upon the asserted illegality of the progressive rate of additional charter hire under Clause 13. Thus, it is alleged that the Commission, for accounting purposes, improperly split the year 1947 into two segments which had the effect of unduly increasing the libelants' charter hire liability. The Commission's construction of the cumulative accounting provision is also asserted to have improperly increased the libelants' charter hire liability. One libelant asserts that the phrase 'capital necessarily employed' as used in Clause 13 has been incorrectly determined with the result that its charter hire liability has been overstated. Another libelant asserts that the Commission improperly reduced its overhead expense, thereby increasing its charter hire liability, by offsetting certain management fees it had received and by refusing inclusion of certain post redelivery overhead expenses in 'the charterer's fair and reasonable overhead expenses applicable to operation of the vessels' as provided in the first paragraph of Clause 13. Two libelants contend that their charter hire liabilities were improperly increased by the refusal of the Commission to allow the inclusion of certain expenses for agency fees in the overhead expense figure envisioned by the extract from Clause 13 just above quoted. Every one of these claims relates solely to the proper computation of additional charter hire and has no independent basis. We hold that these claims should be dealt with in the same manner as the basic claim for recovery of excessive charter hire. For all were reserved by Clause 13 until 'final audit' whatever that term shall be determined to mean.
 
 
 35
 A different situation, however, prevails with regard to Blidberg's claim for refund of expenditures for latent defects existing at the time the vessels were delivered on charter as contained in its sixth cause of libel. Such a claim does not come within the express provision of Clause 13 which reserves disputes concerning 'additional charter hire.' The accrual of this claim, therefore, was not deferred until the final audit and consequently it is time-barred. Isthmian Steamship Co. v. United States, D.C.S.D.N.Y., 146 F.Supp. 219; Alcoa Steamship Co. v. United States, D.C.S.D.N.Y., 94 F.Supp. 406. However, this item, though not directly recoverable, may indirectly affect the proper computation of Blidberg's additional charter hire. To the extent that this is so, it may be necessary to litigate this expense for its impact on a proper computation of Blidberg's additional charter hire even though direct recovery of the expense be time-barred.
 
 
 36
 To the extent that Sword Line and American Eastern are inconsistent with rulings indicated above, they are overruled.
 
 
 37
 The appeal of Dichmann, Wright & Pugh, Inc. is dismissed. All other decrees appealed from are reversed and the suits are remanded for further proceedings in accordance with this opinion, except that the dismissal of Blidberg's sixth cause of libel is affirmed.
 
 
 38
 On Petition of Appellee for Further Rehearing en Banc
 
 
 39
 HINCKS, Circuit Judge.
 
 
 40
 The United States, as appellee, attacks the decision carried in our opinion of July 28, 1958, on the ground, inter alia, that Judge Medina, who concurred therein, by virtue of his retirement on March 1, 1958 was disqualified under 28 U.S.C.A. 46(c) from participating. We disagree.
 
 
 41
 It was on December 19, 1957 that we granted rehearing of our earlier decision before the court in banc. The court in banc comprised Chief Judge Clark, Judges Medina, Hincks, Waterman and Moore, all then active circuit judges. Judge Lumbard declined to sit with the court on the ground that he was disqualified by reason of earlier contacts with the cases below when serving as United States Attorney. The court in banc when thus constituted conformed in all respects to 28 U.S.C.A. 46(c) which provides: 'A court in banc shall consist of all active judges of the circuit.' Since Judge Medina was a member of the court in banc which was duly constituted to hear and determine the issues raised by the petition for rehearing, we think his subsequent retirement did not affect his competence to participate in the decision thereafter reached. Nothing in the Code requires that the court of appeals when once constituted according to law, whether in banc or by assignment as an authorized division, shall suspend its judicial task and reconstitute itself either to exclude an active member of the court thereafter retiring or to include an active member of the court thereafter appointed. As the Reviser's note indicates, 46 was included in the Code of 1948 to preserve the interpretation established by Textile Mills Securities Corporation v. Commissioner of Internal Revenue, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249, that notwithstanding the three-judge provision of 212 of Title 28 U.S.C., 1940 Ed., a court of appeals might lawfully consist of a greater number of judges sitting in banc. Nothing in Textile Mills nor the Code provisions which preserve its interpretation suggests that retirement under 28 U.S.C.A. 371 operates to terminate the power of the retiring judge as a member of the court in banc to participate in the decision of a case formerly assigned to the court but as yet undecided. We have found no reported case which so holds. We think the case of Commercial National Bank in Shreveport v. Connolly, 5 Cir., 177 F.2d 514, supports our conclusion that the competence of a judge who is once duly constituted a member of a court in banc, may survive his retirement. There Judge Sibley who as an active member of the Fifth Circuit Court of Appeals had participated in the decision of a case heard in banc, thereafter retired (on October 1, 1949) and subsequently cast the decisive vote for an order (filed November 16, 1949) denying a petition for rehearing which had been made to the court in banc.
 
 
 42
 Moreover, 43(b) of the Code of 1948 provides: 'Each court of appeals shall consist of the circuit judges of the circuit in active service. The circuit justice and justices or judges designated or assigned shall also be competent to sit as judges of the court.' This provision is not stated to be exclusive of the 'judges designated or assigned' to hear and determine a case as members of a court in banc. The provision is as applicable to such judges as it is to judges designated and assigned to the divisions of the court provided for in 46(b) and to judges designated and assigned under 294 and 296. The provision thus lends further support to our conclusion that Judge Median, who under 46(c) was designated and assigned as a member of the court in banc was competent even after his retirement to sit under 43(b), 294(b) and 296.
 
 
 43
 The other claims of error raised in the petition we think unfounded. They involve matters already carefully considered by us. And the requested clarifications we think unnecessary and inappropriate. We have reversed and remanded for a determination of jurisdiction and, if jurisdiction be sustained, of the merits. We have made it plain that these determinations should be made without constraint by Sword Line, Inc. v. United States, 2 Cir., 228 F.2d 344, and American Eastern Corp. v. United States, 2 Cir., 231 F.2d 664, and of course in conformity with out opinion of July 28, 1958. The questions now put to us are questions for answer by the parties and the trial court.
 
 
 44
 Petition denied.
 
 
 45
 Separate Statement of CLARK, Chief Judge, and WATERMAN, Circuit Judge.
 
 
 46
 Judge HINCKS' opinion herewith demonstrates both the difficulty and the impracticability of interpreting the governing statute, 28 U.S.C. 46(c), otherwise than by giving the word 'determined' its normal meaning of 'decided,' and the word 'active' its natural force of 'non-retired.' This view is underlined by the contrast drawn between judges 'in active service' and 'retired' judges, even though designated to sit, in the several statutes such as 28 U.S.C. 294(b) and (d), 295, 296, and 371(b). It appears to be the general conclusion of other circuits. In re Sawyer, 9 Cir., 260 F.2d 189, 203, note 17, certiorari granted 358 U.S. 892, 79 S.Ct. 153, 3 L.Ed.2d 119; G. H. Miller & Co. v. United States, 7 Cir., 260 F.2d 286, 305; United States v. Gordon, 7 Cir., 253 F.2d 177, 185, 191, 194; see also United States v. Sentinel Fire Ins. Co., 5 Cir., 178 F.2d 217, 239, and Commercial Nat. Bank in Shreveport v. Connolly, 5 Cir., 177 F.2d 514, interpreted in the light of Fifth Circuit Rule 29, 28 U.S.C.A. stating the vote required for a rehearing. And it has been the uniform practice of our own clder colleagues. Reardon v. California Tanker Co., 2 Cir., 260 F.2d 369, 375, 376, certiorari denied California Tanker Co. v. Reardon, 79 S.Ct. 609; United States v. Silverman, 2 Cir., 248 F.2d 671, 696, certiorari denied 355 U.S. 942, 78 S.Ct. 427, 2 L.Ed.2d 422; Harmar Drive-In Theatre, Inc. v. Warner Bros. Pictures, 2 Cir., 241 F.2d 937, certiorari denied 355 U.S. 824, 78 S.Ct. 31, 2 L.Ed.2d 38. Moreover, it is necessary if the obviously indicated policy that the active circuit judges shall determine the major doctrinal trends of the future for their court is not to be flouted by the freezing in of a particular grouping of judges for months (as here) or even for years. And so notwithstanding some personal regret and even doubt as to the ultimate wisdom of the policy, it must be held that the decision of July 28, 1958, purporting to reverse the decrees below is ineffective and void for lack of a valid majority vote and those decrees under consideration here must stand affirmed by an equally divided court. People v. Bork, 96 N.Y. 188, 199; Watson v. Payne, 94 Vt. 299, 111 A. 462.
 
 
 47
 WATERMAN, Circuit Judge (dissenting).
 
 
 48
 I concur with the majority that the purported appeal in No. 24283, Dichmann, Wright & Pugh, Inc. v. United States, should be dismissed for lack of appellate jurisdiction.
 
 
 49
 With respect to the issues relative to jurisdiction that the majority find to have been raised in the other thirteen cases and which in their judgment require remand to resolve, I concur in the dissenting opinion of Judge CLARK. I would hold, with him, that the respective written instruments in each case, all of which contain the identical Clause 13, need no further judicial consideration below to make them properly interpretable, and that the interpretation placed upon these charter-parties in his dissent is a proper and justifiable one. I believe we should decide now, without more, whether these cases, case by case, are so timebarred as to deprive the courts of any jurisdiction over the respective alleged causes of action, and in the course of so doing I would follow our previous holdings in Sword Line, Inc., v. United States, 2 Cir., 1955, 228 F.2d 344, affirmed on rehearing, 2 Cir., 1956, 230 F.2d 75, affirmed 1956, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493, and in American Eastern Corp. v. United States, 2 Cir., 1956, 231 F.2d 664, certiorari denied, 1956, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497. When the libels were dismissed below for lack of jurisdiction libelants moved to amend the dismissed libels in order to present additional grounds to justify the taking of jurisdiction. See A. H. Bull S.S. Co. v. United States, D.C., 141 F.Supp. 58, 59-60. Not only were the libels severally dismissed below, but the motions to amend were severally denied; and appeals from the dismissals and the denials of the motions to amend were then taken. What is gained by not taking up these rulings now? Since it is my belief that the rulings below in these thirteen cases were in all respects proper, I would affirm the decisions of Judges Palmieri and Herlands below.
 
 
 50
 CLARK, Chief Judge (dissenting).
 
 
 51
 Despite many years on the bench I have still to find an acceptable formula for appellate disposition of a case where the adjudication below gives concern, but falls short of clearly demonstrable error. Of this at least I do feel sure, that a court of review should not attempt to relieve itself of responsibility-- get itself off the hook-- by merely remanding, i.e., passing the buck back, to the trial court. It should remand only when it has a clear concept of what the trial judge can do to advance the case to final adjudication and precisely states that for his benefit and the benefit of the litigants thus subjected to tantalizing delay.
 
 
 52
 These basic requirements seem to me quite unfulfilled in the decision herewith. The mandate is merely for remand 'for further proceedings in accordance with this opinion.' The opinion proper has some further vague suggestions or directions for the 'framing' of issues-- apparently many of them-- and for the taking of testimony-- evidently extensive and unlimited-- as to each. But the opinion itself demonstrates by the controlling force it gives to Clause 13 of the charters that there is really but a single issue, namely, the interpretation of a written instrument. And on this the record is already complete and the case ripe for final ruling. More precisely stated the issue is whether Clause 13 can be interpreted to control and set aside the normal rule-- relied on in our earlier rulings on the issue[1] -- that on a quasi-contractual claim for refund of payments asserted to have been erroneously made the right of action accrues and the period of limitation begins to run from the time of the payments. Indeed, the whole tenor of the decision seems to be that, since limitation restrictions are harsh, we must search assiduously-- and ask for trial court help thereto-- for means to interpret a contract of seemingly different purport to achieve that end. In taking this rather unusual course my brothers give short shrift to the views of many district judges and of two different panels of this court, whose adjudications the Supreme Court refused to disturb. I think the explanation proffered is inadequate for its task.
 
 
 53
 To understand what is happening we must consider the state of the existing record before remand. What we are dealing with is a 'built-in' statute of limitation forming a very direct boundary to the grant of remedy against the sovereign. 46 U.S.C. 745. This is important in several ways. It shows the strong legislative policy against stale claims against the government. It clearly places the burden of proof upon the claimants to show that they properly come within an unrestricted class. And since it thus vitally delimits the court's jurisdiction, it makes appropriate and normal the usual processes for the testing of issues of federal jurisdiction, as actually had here, namely, motion and affidavit.[2] In short it was incumbent upon the libelants to demonstrate by their affidavits that their libels were timely or, as applied to the issue here, that the negotiations for and background of the charters showed the correct interpretation of Clause 13 to be one for extending the time of suit. And this they attempted with at least a wealth of material, however pertinent it may be thought to be.
 
 
 54
 It is, indeed, a reflection upon able and shrewd counsel to believe that, faced with the legal requirement and practical necessity of disclosure, they should have held back relevant and convincing material. One of the more confusing aspects of the decision is that it is not clear how far it is intended to repudiate the normal procedure for testing issues of federal jurisdiction as shown by the cases cited in my footnote 2 supra. In any event we cannot expect miracles of counsel; anything more they bring to a new trial will be only cumulative to what is already before us. Obviously were there oral evidence of direct statements of intent on the part of the negotiators now presently remembered (none has been suggested), such evidence could not be used to control or vary the written document. All the material useful for decision is actually at hand; I do not see why my brothers do not employ it for final adjudication that jurisdiction exists if such is the way they feel they must go. The obstacles will not be any the less after two or three more years of protracted litigation.
 
 
 55
 That this is their direction is, I think, to be fairly deduced from the opinion, even though the discussion therein is limited. Not only does it accept the text of Clause 13 as 'an adequate, prima facie, showing of jurisdiction,' but it takes the highly drastic and quite confusing course of overruling out of hand our two previous rulings to the contrary cited in my note 1 supra. What reason is there for overruling Sword Line and American Eastern if eventually they may be held correctly decided? Indeed, in the present state of division in the court, what reason or effect is there to this declaration in any event?[3]
 
 
 56
 Let us look more closely at this 'prima facie' ruling. In interpreting the writing we must start with the congressional policy disfavoring stale claims. I see no reason here for exceptional treatment. The contracts were made, the services performed, and the payments made a decade or more ago. And what is more, the ships were actually returned to the government, thus entirely closing the transactions, almost a decade ago. It is especially strange, if these were live issues where the government was expected to make vast refunds, that some of the rental payments were actually made after the ships were returned.[4] One can understand belated payments by the charterers if they thought the hire was actually due, but hardly if they were preparing to claim that there had already been gross overpayment. If ever stale claims against the government are to be viewed with a jaundiced eye, these would seem to be the occasion.
 
 
 57
 Turning now to Clause 13 itself-- quoted in full in the opinion-- it should be noticed that it is not a provision for claim adjustment; nor does it in any way suggest that it was meant to deal with the processing of claims for refund. Clearly it is what it is labeled as being, namely, a provision for 'Additional Charter Hire.' It follows naturally after Clause 12, covering 'Basic Charter Hire,' and in its main section provides a scale for such additional hire based on cumulative net voyage profits of the charter in any calendar year. The emphasis on yearly accountings is obvious. The particular provisions here in issue come at the end and deal with preliminary and final payments of such additional charter hire, based on the scale stated. So a method is provided whereby the government can ask and receive preliminary payments as the money is earned, and the 'final audits' clearly refer to the yearly settlements thus made necessary. Quite simply they are necessary because the progressive rate of additional hire depends on the amount of cumulative profits for the year. They just do not fit the concept of an ultimate and probably long delayed settlement of all disputes which might conceivably arise under any of the manifold provisions of these extensive charters. Significantly a much later charter provision does look to such possibility, thereby affording a persuasive contrast. For Clause 28 deals with 'Accounting, Report and Supervision' and requires the keeping of books, the filing of financial statements, and the like, covering all transactions, while it also authorizes the auditing of all books and the maintenance of checks and controls of expenditures and revenues in connection with the operation of any of the chartered vessels.
 
 
 58
 In the final paragraph of Clause 13 the preliminary statements therein referred to are correlated with the final audit. This places a well-nigh insuperable obstacle in the way of the interpretation claimed by libelants. For the 'adjustment' visualized is to be had 'either at the time of the rendition of preliminary statements or upon the completion of each final audit by the Owner'; the idea is carried further thus, 'at which times such payments will be made to the Owner as such preliminary statements or final audit may show to be due, or such overpayments refunded to the Charterer as may be required.' Each final audit therefore serves a function of settling the payments due on each calendar year's profits. Thus it fits properly with the rest of the clause. It cannot be made to mean some final settlement of all and sundry differences a decade or more hence when at length both parties are prepared to have a balance struck. Thus the government's brief is correct in saying: 'Thus the charterers' right to file a claim for adjustment and refund of an overpayment of additional hire and to bring immediate suit if refund was not made is precisely the same at the time of a charterer's rendition of its preliminary accountings and at the time of the owner's final audit.'
 
 
 59
 This matural construction is supported by various Maritime Administration regulations which (1) require the charterer at the end of each calendar month to pay 90 per cent of the additional charter hire then indicated to be due, 46 CFR 299.31(k)(1); (2) provide that such payments are preliminary and subject to adjustment upon completion of audit by the government covering the period involved (the calendar year), id.; (3) provide that tender of the monthly payments and their acceptance do not prejudice rights under the charter or otherwise, id.; (4) require remittance of monthly payments to be accompanied by a preliminary statement, 46 CFR 299.31(k)(2); (5) provide that if this statement indicates that 90 per cent of the cumulative total for the expired portions of the periods involved (calendar year) is less than the total of payments theretofore made for the period, the charterer may apply for a refund, 46 CFR 299.31(k)(5); and (6) require each charterer to submit a separate final accounting of additional charter hire for each annual or over-all accounting period (which under 46 CFR 299.37-1(h) and (i) is defined as a calendar year or a period less than a calendar year, 46 CFR 299.37-2(b)). Hence, simply put, Clause 13, read with the regulations, provides that the charterers must make monthly payments on account of the additional charter hire which are preliminary because only upon the rendition of preliminary statements or upon final audit for the year will the parties know whether or not the amounts of the monthly payments were correct.
 
 
 60
 Neither in wording nor in practical operability, however, is the Clause appropriate for the adjustment of the type of 'overpayment' here involved. For the charterers knew that as they read the law the sums here claimed were not correct even when remitted. So there is not suggestion anywhere in the contract that the earlier language in Clause 13 bears on these 'overpayments' in any way. Nor is there any suggestion in Clause 13 or in the regulations that the preliminary payments are tentative because the charterers believed the Clause to be illegal or that the parties agreed to put off a judicial determination of the legality of the rates. It is a strange contract which would preclude suit by the charterers to reform the contract or to recover the specific monthly 'overpayments' if actually illegal. But, as the opinion herewith makes clear, libelants to succeed must rely on such an interpretation, viz., that the phrase 'each final audit' can mean only some type of closing-out accounting which ultimately and finally terminates all relations between the charterers and the United States. I submit with all deference that the mere statement of the argument betrays its weakness; without fairly conclusive support somewhere for such a reading there is no 'prima facie showing of jurisdiction.' Surely the parties did not intend an agreement to require the deposits of huge sums of money for an indefinite time pending determination of the legality of the contract rates. For quite clearly the period of limitation can start only when the parties agree and are content that they have eventually obtained an ultimate closing-out accounting. Ironically enough, since even late deposits are to be included, there is nothing to prevent the charterers from continuing to make the government a good and safe depositary, paying better than market rates of interest, for their excess funds. Hence for my part I cannot accept this as permissible interpretation against respondent's persuasive showing (wholly consistent with both the charters and the regulations) that 'each final audit' means an audit of the charterers' yearly profits.
 
 
 61
 It is true that the libelants ably and ingeniously develop various arguments from the background material in an endeavor to combat this analysis. Doubtless they will fashion others if allowed to prolong the proceedings. But the very ingenuity exercised, viewed against the results achieved, suggests how pressing is their need for an argumentative support which they still find lacking. It hardly seems worth while now to discuss these arguments at length beyond a general suggestion of their weakness. They deal either with supposed inconsistencies with the government's present position, such as segregation of accounts or the like, or with claimed admissions by the Maritime officials. The principle against waiver of public rights by government officers would make these dubious in any event; but even more important is the fact that the inconsistencies or waivers are apparent only to those predisposed to see them. They obviously did not occur to the officials at the time. Unconscious waiver of public rights is not a legal principle to be pressed far.
 
 
 62
 The opinion states that the government for a considerable time concealed its present and ultimate contention. That charge, if important, does not seem to me to be sustained on the record. Appellants have vacillated in the theories they would rely upon, and seemingly have come to a choice of Clause 13 only recently. As the case developed there was not early occasion for the government to be more specific in its opposition (which has always been steady and continuous) than it has been. And its position has been reasonably well known, as was apparent in the earlier cases before us. So Judge Walsh, ably analyzing these points in the trial court in the American Eastern case, D.C.S.D.N.Y., 133 F.Supp. 11, 16 (cited in note 1 supra), well concludes:
 
 
 63
 'The labyrinthine aspects of the charter and regulations which libelant has seen fit to exaggerate are really only superficial. They are to be expected in any administrative attempt to deal with a complex subject matter on a mass scale. Care must be taken not to permit their seeming complexity to confuse the elementary simplicity of the dealings between the parties.'
 
 
 64
 In any event the point cannot be of controlling importance, since we have now come quite completely to the point where we enforce justice and the law, notwithstanding possible deficiencies in presentation by the lawyers.[5]
 
 
 65
 Consequently I must conclude that the procedure here does not require, but indeed makes anomalous, any further trial or delay in adjudication. The case is ripe for final settlement, which should now be had, of the jurisdiction issue. And any termination which does not follow the simple course stated in Sword Line and applied in American Eastern runs into serious difficulties, as resting upon a strained interpretation of a written instrument. Here some note should be taken of our procedure. These cases were originally argued on Janurary 15, 1957. The process of decision, particularly the rehearing in banc, has delayed action now for a year and a half, and the end is of course not yet in sight. I fear nothing has been achieved by the delay but the accentuation of our differences, with no progress toward their adjustment. Had the case been terminated by February 1957 by decision of the original panel, with a concise statement of our disagreement-- a matter of interest, which the public is entitled to know-- but without attempting the supposed, though illusory, reconciliation of views to be obtained by a hearing in banc, everyone, it seems, would have profited.
 
 
 66
 Hence I would affirm the decisions reached below by able district judges in accordance with views heretofore expressed by this court. I should add that of course I do not object to the dispositions made of certain libels not presenting the main issue. But as to this issue, since there would seem a distinct possibility of its going higher-- in view of its great importance involving, inter alia, the premature and undefined overruling of previously settled precedents-- I do feel an obligation to mention the further question here definitely presented as to the effect of a vote by a judge retired from regular active service under 28 U.S.C. 371(b) upon an appeal which has been ordered heard in banc. The question arises because the governing statute 28 U.S.C. 46(c) says: 'A court in banc shall consist of all active circuit judges of the circuit'; and Judge Medina, whose vote is here decisive, took advantage of the retirement provisions of 28 U.S.C. 371(b) on March 1 last. I do not like to raise the question (which obviously can be settled only by the Supreme Court or by corrective legislation) because I have been active in inducing retired colleagues to sit and because I regard their continued participation in cases committed to their consideration desirable and beneficial all around. And I think this conclusion also applies to retired District Judge Leibell, who sat on the original panel herein which voted for affirmance. But the matter has caused doubt and uncertainty in other cases we have had, and a definitive answer is urgently desirable.
 
 
 
 [1]
 A few of the libels alleged disputes as to the valuation of specific items entering into the cost basis upon which the profits were calculated. These included differences concerning the amount of 'capital necessarily employed,' the 'post redelivery overhead expenses,' the 'cost of repairing latent defects,' 'management fees' and 'agency fees.'
 
 
 [2]
 'November 5, 1956
 Memorandum
 'Libelant here seeks to recover from respondent alleged overpayments made pursuant to its charter of certain Government-owned vessels. Libelant further seeks leave to amend its libel in order to allege, in fuller detail, the transactions giving rise to the alleged causes of action.
 'Respondent excepts to the libel as time-barred under Suits in Admiralty Act, 46 U.S.C.A. section 741, et seq., and opposes the proposed amended libel on the theory that, as amended, the libel still fails to state a cause of action accruing within the required two-year limit prior to the date of filing of the libel.
 'Respondent's exception is sustained; libel dismissed. Libelant's application for leave to amend is denied.
 'The points now at issue before the Court have been too well-settled by recent authoritative decisions as to require consideration de novo. Sword Line v. United States, 2 Cir., 1955, 228 F.2d 344, affirmed on petition for rehearing, 1956, 230 F.2d 75, affirmed 1956, 351 U.S. 976, (76 S.Ct. 1047, 100 L.Ed 1493), cert. having been granted only on the question of admiralty jurisdiction; American Eastern Corp. v. United States, (D.C.) S.D.N.Y.1955, 133 F.Supp. 11; affirmed 2 Cir., 1956, 231 F.2d 664, cert(iorari) denied 1956, 351 U.S. 983 (76 S.Ct. 1050, 100 L.Ed. 1497); A. H. Bull Steamship Co. v. United States, (D.C.) S.D.N.Y.1956, 141 F.Supp. 58. The Court has read the briefs in the three cited cases and is satisfied that the questions of law presented herein were adequately argued before and decided by the courts in such cases.
 'Settle order on notice.
 William B. Herlands United States District Judge.'
 
 
 [3]
 'Clause 13. Additional Charter Hire. * * *
 'The Charterer agrees to make preliminary payments to the Owner on account of such additional charter hire and on account of any additional charter hire accrued under any War Shipping Administration Form 203 (Warshipdemiseout) charter (prior to the times of payment provided for above or in such Warshipdemiseout charters) at such times and in such manner and amounts as may be required by the Owner; provided, however, that such payment of additional charter hire shall be deemed to be preliminary and subject to adjustment either at the time of the rendition of preliminary statements or upon the completion of each final audit by the Owner, at which times such payments will be made to the Owner as such preliminary statements or final audit may show to be due, or such overpayments refunded to the Charterer as may be required.'
 
 
 [4]
 'Where a voucher check is tendered by the Charterer, it is requested that no reference be made thereon through restrictive legend or otherwise to the effect that it is a final settlement. The accompanying letter of transmittal should state that the remittance is on account of additional charter hire due the Maritime Administration and is subject to adjustment upon the completion of final accounting between the Charterer and the Maritime Administration and that neither the tender of such payment by the Charterer, nor its acceptance by the Maritime Administration shall be construed as an approval of the correctness of the amount thereof, nor as a waiver of the rights or remedies of either party under the terms of the agreements involved or otherwise.' (May 14, 1951 letter from Maritime.)
 
 
 [5]
 Judge LUMBARD has not participated in this appeal
 
 
 [6]
 This action was required under the holdings of prior decisions of this court which will be discussed in this opinion
 
 
 [7]
 'Clause 13. Additional Charter Hire. If at the end of the calendar year 1946, or any subsequent calendar year or at the termination of this Agreement, the cumulative net voyage profit (after the payment of the basic charter hire hereinabove specified and payment of the Charterer's fair and reasonable overhead expenses applicable to operation of the Vessels) shall exceed 10 per centum per annum of the Charterer's capital necessarily employed in the business of the Vessels (all as hereinafter defined), the Charterer shall pay over to the Owner at Washington, D.C., within 30 days after the end of such year or other period, as additional charter hire for such year or other period, an amount equal to the percentages of such cumulative net voyage profit in excess of 10 per centum per annum on such capital computed in accordance with the following table (but such cumulative net profit so accounted for shall not be included in any calculation of cumulative net profit in any subsequent year or period):
 'Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) not in excess of $100 per day-- 50%. 'Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $100 per day but not in excess of $300 per day-- 75% on such excess over $100 per day. 'Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $300 per day-- 90% on such excess over $300 per day.
 'The Charterer agrees to make preliminary payments to the Owner on account of such additional charter hire and on account of any additional charter hire accrued under any War Shipping Administration Form 203 (Warshipdemiseout) charter (prior to the times of payment provided for above or in such Warshipdemiseout charters) at such times and in such manner and amounts as may be required by the Owner; provided, however, that such payment of additional charter hire shall be deemed to be preliminary and subject to adjustment either at the time of the rendition of preliminary statements or upon the completion of each final audit by the Owner, at which times such payments will be made to the Owner as such preliminary statements or final audit may show to be due, or such overpayments refunded to the Charterer as may be required.'
 
 
 [8]
 'Where a voucher check is tendered by the Charterer, it is requested that no reference be made thereon through restrictive legend or otherwise to the effect that it is a final settlement. The accompanying letter of transmittal should state that the remittance is on account of additional charter hire due the Maritime Administration and is subject to adjustment upon the completion of final accounting between the Charterer and the Maritime Administration and that neither the tender of such payment by the Charterer, nor its acceptance by the Maritime Administration shall be construed as an approval of the correctness of the amount thereof, not as a waiver of the rights or remedies of either party under the terms of the agreements involved or otherwise.' May 14, 1951 letter from Maritime
 
 
 [9]
 For purposes of this opinion it is not necessary to pass upon this contention. We observe, however, that carried to its logical conclusion the contention is that every issue going to the merits is jurisdictional
 
 
 [10]
 As to the timeliness of the libels, certiorari was denied
 
 
 [1]
 Sword Line, Inc., v. United States, 2 Cir., 228 F.2d 344, affirmed on rehearing 230 F.2d 75, affirmed 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493; American Eastern Corp. v. United States, D.C.S.D.N.Y., 133 F.Supp. 11, affirmed 2 Cir., 231 F.2d 664, certiorari denied 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497
 
 
 [2]
 Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209; KVOS, Inc., v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183; Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85; Williams v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal., 14 F.R.D. 1; Ramirez & Feraud Chili Co. v. Las Palmas Food Co., D.C.S.D.Cal., 146 F.Supp. 594, 597, affirmed Las Palmas Food Co. v. Ramirez & Feraud Chili Co., 9 Cir., 245 F.2d 874, certiorari denied 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357; and see full discussion in 6 Moore's Federal Practice P56.03, pp. 2027, 2028 (2d Ed. 1953), also 5 id. P38.36, pp. 290-292 (2d Ed. 1951), 2 id P12.09, pp. 2248-2250, 2256, P12.14 (2d Ed. 1948)
 
 
 [3]
 It is made by a minority only of the active judges, against the expressed view of other judges who may ultimately prevail. An overruling so deficiently based can only mislead the unwary
 
 
 [4]
 Some of the payments were actually made within the two-year limitation; while these are not separately noted in the opinion, they seem barred as voluntary payments
 
 
 [5]
 See, e.g., United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630, reversing 2 Cir., 239 F.2d 527; Vibra Brush Corp. v. Schaffer, 2 Cir., 256 F.2d 681; Columbia Research Corp. v. Schaffer, 2 Cir., 256 F.2d 677; Joint Council Dining Car Employees Local 370, Hotel and Restaurant Employees International Alliance v. Delaware, L. & W.R. Co., 2 Cir., 157 F.2d 417, 420; Massachusetts Bonding & Ins. Co. v. State of New York, 2 Cir., 259 F.2d 33