RAILROAD COMPANY *v.* COMMISSIONERS.

1. In Nebraska, no demand for taxes is required, but it is the duty of every person subject to taxation to attend at the office of the county treasurer and make payment.

2. Certain lands in that State, the patents for which had been withheld from the Union Pacific Railroad Company by the United States, having been assessed for taxation and the taxes remaining unpaid, the tax-lists, with warrants thereto attached, were issued, authorizing the county treasurer, upon default in the payment of the taxes, to enforce the collection of them by the seizure and sale of the personal property of the company.   The company paid them, while protesting in writing that they were illegally and wrongfully assessed and levied, and were wholly unauthorized by law.   At that time, they had not been demanded, and no special effort had been made by the treasurer for their collection, nor had he attempted to seize the personal property of the company.   Patents for the lands were subsequently issued to the company.   After the decision in *Railway Company* v. *McShane* (22 Wall. 444), that the lands were exempt from taxation, the company brought this action to recover the amount so paid.   *Held,* that there being no statute giving the right to recover in such cases, the action could not be maintained.

ERROR to the Circuit Court of the United States for the District of Nebraska.

The facts are stated in the opinion of the court.

*Mr. A. J. Poppleton* for the plaintiff in error.

*Mr. J. M. Woolworth* and *Mr. W. H. Munger, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was a suit to recover back taxes for the years 1870 and 1871, paid by the Union Pacific Railroad Company upon certain lands in Dodge County, Nebraska. The lands were among those granted by Congress to the company to aid in the construction of its railroad (12 Stat. 489), but the patents were withheld until after the taxes had been paid, by reason of the joint resolution of Congress " for the protection of the interests of the United States in the Union Pacific Railroad Company, the Central Pacific Railroad Company, and for other purposes," approved April 10, 1869. 16 Stat. 56.

The lands were returned by the United States land officers to the State auditor and by him to the county clerk for taxation, as required by the General Statutes of Nebraska, and were placed upon the assessment list of the county. The general and the local taxes levied for the respective years were carried out against these lands, with others upon the lists, and the railroad company designated as owner. In due time the tax-lists, with warrants attached for their collection, were delivered to the treasurer of the county. The taxes for the year 1870 became payable May 1, 1871, and those for 1871, May 1, 1872. The warrants authorized the treasurer, if default should be made in the payment of any of the taxes charged upon the lists, to seize and sell the personal property of the persons making the default to enforce the collection.

No demand of taxes was necessary, but it was the duty of every person subject to taxation to attend at the treasurer's office and make payment. During the years 1870, 1871, and 1872, the railroad company was the owner of other lands in the county, and other property, both real and personal, on which taxes were properly levied. On the 11th of August, 1871, the company attended at the treasurer's office, and paid all taxes

charged against it for the year 1870, and on the 20th of July, 1872, all that were charged for the year 1871. Before these payments were made there had been no demand for the taxes, and no special effort had been put forth by the treasurer for their collection. The company had personal property in the county which might have been seized; but no attempt had been made to seize it, and no other notice than such as the law implies had been given that payment would be enforced in that way.

At the time the several payments were made the company filed with the treasurer a notice in writing that it protested against the taxes paid, for the reason that they were illegally and wrongfully assessed and levied, and were wholly unauthorized by law, and that suit would be instituted to recover back the money paid.

This suit was begun Aug. 20, 1875, and on the trial the judges of the Circuit Court were divided in opinion as to the question, among others, "whether the payment of the said taxes under the written protests above appearing, without any demand therefor or effort to collect the same, made the payment a compulsory one in such sense as to give the plaintiff (the railroad company) the right to recover back the amount thereof as at common law, there being no statute giving or regulating the right of recovery in such cases." The presiding judge being of the opinion that the payment was voluntary and not compulsory, judgment was entered against the railroad company, and the case has been brought to this court upon a writ of error for a determination of the question upon which the judges were divided, and which has been duly certified upon the record.

We have no difficulty in answering the question in the negative. We had occasion to consider the same general subject at the last term in *Lamborn* v. *County Commissioners* (97 U. S. 181), which came up on a certificate of division from the Circuit Court for the District of Kansas. As that was a case from Kansas, we followed the rule adopted by the courts of that State, which is thus stated in *Wabaunsee County* v. *Walker* (8 Kan. 431): "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand

illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary."

This, as we understand it, is a correct statement of the rule of the common law. There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances. Thus, in *Elliott* v. *Swartwout* (10 Pet. 137) and *Bond* v. *Hoyt* (13 id. 266), which were customs cases, the payments were made to release goods held for duties on imports; and the protest became necessary, in order to show that the legality of the demand was not admitted when the payment was made. The recovery rested upon the fact that the payment was made to release property from detention, and the protest saved the rights which grew out of that fact. In *Philadelphia* v. *Collector* (5 Wall. 730) and *Collector* v. *Hubbard* (12 id. 13), which were internal-revenue tax cases, the actions were sustained "upon the ground that the several provisions in the internal-revenue acts referred to warranted the conclusion as a necessary implication that Congress intended to give the tax-payer such remedy." It is so expressly stated in the last case. p. 14. As the case of *Erskine* v. *Van Arsdale* (15 id. 75) followed these, and was of the same general character, it is to be presumed that it was put upon the same ground. In such cases the protest plays the same part it does in customs cases, and gives notice that the payment is not to be considered as admitting the right to make the demand.

The real question in this case is whether there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion. The treasurer had a warrant in his hands which would have authorized him to seize the goods of the company to enforce

the collection.  This warrant was in the nature of an execution running against the property of the parties charged with taxes upon the lists it accompanied, and no opportunity had been afforded the parties of obtaining a judicial decision of the question of their liability.  As to this class of cases Chief Justice Shaw states the rule in *Preston* v. *Boston* (12 Pick. (Mass.) 14), as follows : " When, therefore, a party not liable to taxation is called upon peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back as money had and received."  This, we think, is the true rule, but it falls far short of what is required in this case.  No attempt had been made by the treasurer to serve his warrant.  He had not even personally demanded the taxes from the company, and certainly nothing had been done from which his intent could be inferred to use the legal process he held to enforce the collection, if the alleged illegality of the claim was made known to him.  All that appears is, that the company was charged upon the tax-lists with taxes upon its real and personal property in the county.  After all the taxes had become delinquent under the law, but before any active steps whatever had been taken to enforce their collection, the company presented itself at the treasurer's office, and in the usual course of business paid in full every thing that was charged against it, accompanying the payment, however, with a general protest against the legality of the charges and a notice that suit would be commenced to recover back the full amount that was paid.  No specification of alleged illegality was made, and no particular property designated as wrongfully included in the assessment of the taxes.  The protest was in the most general terms, and evidently intended to cover every defect that might thereafter be discovered either in the power to tax or the manner of executing the power.  Three years afterwards, and after the decision in *Railway Company* v. *McShane* (22 Wall. 444), which was supposed to hold that the particular lands now in question were not subject to taxation, this suit was brought.  Under such circumstances, we cannot hold that the payment was compulsory in such a sense

as to give a right to the present action. As the answer to this question disposes of the case, it is unnecessary to consider the other questions certified.

*Judgment affirmed.*