512 P.2d 39

### MERCHANTS DESPATCH TRANSPORTATION CORPORATION, a corporation, Appellant,

v.

### ARIZONA STATE TAX COMMISSION, a body corporate and politic, and L. Waldo DeWitt, chairman, and John M. Hazelett and Robert A. Kennedy, as members of and constituting said Arizona State Tax Commission, Appellees.

**No. I CA–CIV 2055.**

Court of Appeals of Arizona, Division 1, Department A.

July 12, 1973.

Rehearing Denied Aug. 21, 1973.

Review Denied Oct. 2, 1973.

Evans, Kitchel & Jenckes, P.C., by David Wm. West, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellees.

DONOFRIO, Presiding Judge.

This is an appeal by appellant-plaintiff Merchants Despatch Transportation Corporation from an order dismissing its complaint which was brought against Arizona State Tax Commission and its members, hereinafter referred to as appellee, for the recovery of property taxes paid under protest in the sum of $21,811.19.

Appellant is a Chicago-based company furnishing railroad cars to others in interstate commerce, which cars pass occasionally through the State of Arizona, thereby becoming subject to state property taxes. Appellant, for purposes of these property taxes, is classified as a "private car company". A.R.S. § 42-741, et seq.

On September 21, 1971 appellant filed its complaint in the Superior Court of Maricopa County. In its complaint appellant alleged a common law right to contest the validity of the 1968 taxes paid, relying on State Tax Commission v. Superior Court, 104 Ariz. 166, 450 P.2d 103 (1969), discussed *infra*. Appellant alleged that the taxes were paid under protest, and that the taxes and the underlying full cash value of its cars upon which the taxes were based were erroneous and excessive. In addition, appellant alleged certain state and federal constitutional defects in the statutory taxing system. For relief, appellant prayed for judgment against appellee Tax Commission in the amount of its 1968 taxes, $21,811.19, or such portion as the trial court deemed proper, plus interest from date of payment and its costs of suit.

Appellee proceeded to file a motion to dismiss dated December 22, 1971, stating that:

"The basis of this motion to dismiss is that the court lacks jurisdiction over the person and the subject matter *for the reason that the taxpayer failed to state in its protest an allegation of excessive valuation of its property for ad valorem tax purposes.*" (emphasis supplied)

After the filing of memoranda dealing with the adequacy of the protest and oral argument, the trial court granted appellee's motion to dismiss. No evidence was taken in the case. It is the trial court's order of February 25, 1972 granting appellee's motion to dismiss that appellant is appealing from.

The principal issues presented on appeal are:

1) Whether this taxpayer in 1968, the tax year in question, had a statutory remedy available to it to appeal for a refund of the property taxes paid, and if not,

2) Whether such a taxpayer had the right, at common law, to appeal the legality of such taxes, and if so,

3) What would be the requirements for perfecting such an appeal?

In resolving these questions, we deem it most expedient to first answer the contentions raised by appellee.

As previously stated, the major argument in appellee's motion to dismiss was that the court lacked *in personam* and subject matter jurisdiction because appellant failed to state in its protest an allegation of excessive valuation of its property. On appeal, appellee now raises the contention that appellant failed to comply with certain statutory protest requirements (notably, A.R.S. §§ 42-124.02 and 42-146) which they argue were applicable to this case, as a condition precedent to maintaining a suit in Superior Court. Because appellant failed to exhaust the administrative remedies provided for in the above statutes, appellee speculates that the Superior Court

correctly granted the motion to dismiss for lack of subject matter jurisdiction. Appellee's argument at the trial court level appears grounded, however, upon the assertion that there is a requirement *somewhere* that a payment under protest be accompanied by specific grounds for the protest. Although appellee's contentions on appeal have essentially been raised for the first time here, we feel compelled to answer them in order to completely resolve this case.

In examining the history of A.R.S. §§ 42–124.02 and 42–146 as they existed in 1968, and as they were amended thereafter, we find that the language of these statutes could not be applicable to private car companies in 1968. The texts of these statutes as they were revised each year are too voluminous to be set forth in this opinion. Suffice it to say that the valuation procedures set out in A.R.S. § 42–146 in 1968 were markedly different from the procedures actually employed in valuing the properties of private car companies for tax purposes that year. Likewise, the timetable for appeals as proscribed in the above statutes as written in 1968 would have made it impossible for private car companies to appeal their tax payments because A.R.S. § 42–146 required the appeals to be taken on or before September 15, whereas a private car company's tax was not even collected until the third Monday in December. *See* A.R.S. § 42–746, as amended, Laws 1967, Chap. 107, § 61.

The Arizona Supreme Court in 1969 also noted that, at that time, there was no statutory procedure whereby a private car company could sue to recover property taxes paid by it, although that privilege was given to others by statute. State Tax Commission v. Superior Court, 104 Ariz. 166, 450 P.2d 103 (1969). The court then specifically found that a private car company had a right under the common law to contest the validity of a property tax assessed against it.

It should also be noted that the statutes upon which appellee relies were amended in 1970 to expressly and implicitly include private car companies within the purview of those statutes. A.R.S. § 42–146, as amended, Laws 1970, Chap. 82, § 3; A.R.S. § 42–124.02, as amended, Laws 1970, Chap. 82, § 1. Quite clearly, then, the remedial action taken by the legislature in 1970 further indicates that prior thereto private car companies were not included in those statutes.

A crucial question which must now be resolved is whether the legislature's remedial action can be retroactively applied to appellant. Generally, statutes and their amendments take effect on the date of enactment or on their effective dates. *82 C.J.S. Statutes § 399, pp. 959–960.* Unless legislative intent is to the contrary, statutes apply only prospectively. A.R.S. § 1–244; 82 C.J.S. Statutes §§ 414–415, pp. 981–992. There is another general rule, however, to the effect that statutes relating to remedies or procedures (such as we have in the instant case) are given a retrospective construction, 82 C.J.S. Statutes § 416, p. 992, and § 421, p. 996, except where such a construction would impose liabilities not existing at the time of its passage, 82 C.J.S. Statutes § 418, p. 995, or where the statutes affect or impair vested rights, 82 C.J.S. Statutes § 417, p. 994, unless the intention of the legislature demands it.

Merchants Despatch "perfected" its rights in this suit when it paid its taxes under protest in 1968. Even though it did little or nothing until 1971, giving retroactive application to the statutes upon which appellee relies would impose additional liabilities upon appellant which it could not meet, and would indeed impair its rights in this case. Because the legislature did not express an intent to have the amended statute apply retroactively, we find, first of all, that the statutory scheme advanced by appellee was inapplicable to taxpayers such as appellant in 1968, and that the amendments to A.R.S. § 42–146, et al., should not be given retroactive construction. We therefore find that this taxpayer had no statutory appeal procedure available to it

in 1968, but reaffirm that it had a right, under the common law, to sue to recover property taxes paid by it under protest.

The next matters that must be resolved concern the "ingredients" of a common law refund suit. In State Tax Commission v. Superior Court, supra, the Arizona Supreme Court stated the following:

"The next question for our consideration is whether an action can be brought without express provision therefore in the taxing Statutes. In Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587 (1940), this court said:

" 'It is agreed by both parties that the general rule of common law is, and always has been, that taxes voluntarily paid without protest, and not under duress, cannot be reovered by a taxpayer.'

\*   \*   \*   \*   \*   \*

"In the present case the Statutes themselves (A.R.S. 42–747 and 42–705) direct the Tax Commission to distrain the respondents goods and chattels or proceed to collect the taxes on or before the third Monday in December. It is to be noted that the third Monday in December of the year 1968 has passed. In a case involving an unconstitutional taxing Statute it was held that the payment of the tax was involuntary when induced by force or duress. Sneed v. Shaffer Oil & Refining Company, 35 F.2d 21 (8th Cir. 1929).

"*A payment of an unconstitutional tax under protest, when made to prevent interference with the conduct of one's business, has been held to be an involuntary payment. . . .*"

\*   \*   \*   \*   \*   \*

"If the restraint of this litigation is withdrawn there is no doubt that the Tax Commission will follow the dictates of the Statute and distrin tank cars and levy on airplanes. Under these circumstances, we hold that payment of taxes under protest would be involuntary payment.

\*   \*   \*   \*   \*   \*

"*Although heretofore there has been no clear expression of our view as to the existence of a common law right to sue for taxes illegally and unconstitutionally exacted, we hold that such right does exist in the absence of any statutory remedy or relief. Involuntary payment of taxes under protest is a condition precedent to the bringing of an action to recover such taxes.* 104 Ariz. at 168–169, 450 P.2d at 105. (Emphasis added)

■■ The above-quoted language indicates that the only condition precedent to the bringing of a common law action to recover taxes paid is that there be an "involuntary payment of [property] taxes under protest." The court stated in State Tax Commission, *supra*, that the Tax Commission's statutory power to distrain a taxpayer's tank cars for nonpayment of taxes is sufficient to make the tax payment under protest involuntary. That determination would also make Merchant Despatch's payment involuntary in the case at bar.

■ Generally speaking, in the absence of a statute to the contrary, a tax paid involuntarily may be recovered, even though no protest was made at the time of payment. 84 C.J.S. Taxation § 638(a), p. 1287; Brandt v. Riley, 139 Cal.App. 250, 33 P.2d 845 (1934); Johnson v. Greiner, 44 N.M. 230, 101 P.2d 183 (1940); 51 Am.Jur. Taxation § 1189, pp. 1021–1022. Arizona has chosen, however, to require both the involuntariness of the payment and that there be a protest, but the Arizona courts have not previously set forth whether the protests must be specific, nor the degree of specificity, nor whether a suit should be limited to the grounds stated in the protest.

■ After reviewing the authority in other jurisdictions, we find that under the common law a tax protest need not specifically set forth the grounds of illegality later urged in a suit for recovery of the taxes paid, nor is a suit limited to the grounds generally stated in the protest.

In Northwestern & Pac. Hypotheekbank v. Adams County, 174 Wash. 447, 24 P.2d

1086 (1933), followed in Northwestern & Pac. Hypotheekbank v. Adams County, 174 Wash. 707, 24 P.2d 1088 (1933), the Washington court, in reviewing a common law action for the refund of taxes, held that a general protest was sufficient to support the maintenance of the action. The court there said:

"Appellants contend that the 1930 tax was not paid under protest, and that respondents for that reason have no right to maintain this action. In the letter transmitting the checks sent in payment of the 1930 taxes, respondents requested that it be noted on the receipts that the taxes were paid under protest. This request was complied with by the county treasurer, and the receipts, bearing date March 9, 1931, were so stamped.

\* \* \* \* \* \*

"Respondents' letter and the stamping of the receipts, 'Paid Under Protest, Treasurer of Adams County,' pursuant thereto, constitute sufficient grounds for the maintenance of this action." [citations omitted]

In the same vein, the Vermont court in National Metal Edge Box Co. v. Town of Readsboro, 94 Vt. 405, 111 A. 386 (1920), concluded that in a common law action to recover illegally collected taxes, a letter of protest to the taxing authority disputing the right to collect the tax was sufficient without specifying the grounds upon which the illegality of the tax was based. *See also* Ward v. First Nat. Bank of Hartford, 225 Ala. 10, 142 So. 93 (1932).

In a landmark decision, the Michigan court in Hudson Motor Car Co. v. City of Detroit, 282 Mich. 69, 275 N.W. 770 (1937), reversed a lower court decision and remanded the case for the entry of judgment in favor of the taxpayer for the amount of taxes paid under protest which had been based upon an improper assessment. The court, discussing the nature of the taxpayer's protest, and having concluded that payment of the tax had been made involuntarily, stated:

" . . . [T]here never has been any rule requiring a *specific* protest when taxes are paid involuntarily. In such cases, *the party suing to recover back the taxes is not limited to the specific grounds of illegality mentioned and set forth in the protest accompanying the payment.* . . ." 275 N.W. at 772. (emphasis added)

See also, 84 C.J.S. Taxation § 638(c) pp. 1291–1292.

██ Finally, appellee raises a question concerning statutes of limitations. Its contention is based upon a provision in the remedial statutes, A.R.S. §§ 42–124.02 and 42–146, which purportedly limits the time within which to sue. Because those statutes have been determined to be inapplicable to the facts of this case, the general provision in A.R.S. § 12–550 (providing a four-year statute of limitations) would be applicable here. Maricopa County, State of Arizona v. Roseveare, 80 F.2d 991 (9th Cir. 1936). The pertinent statute of limitations generally begins to run at the time the taxes were paid. 84 C.J.S. Taxation § 639(c), pp. 1298–1299. Appellant therefore had until December 16, 1972 to file suit. It was thus well within the statutory period in filing its claim in September 1971.

To briefly summarize, appellant's interests in this case were "vested" at the time it paid its taxes under protest. Although there was no statutory protest procedure applicable to appellant in 1968, it nevertheless had a common law right to sue to recover taxes paid, so long as it specifically paid the taxes involuntarily under protest. The threat of loss of its property in order to satisfy a delinquent tax payment was sufficient to make the payment involuntary. Furthermore, a payment made under protest need not specify in detail each and every ground of the protest, and a refund suit is not limited to the grounds set forth in the protest.

The judgment of the trial court is reversed with directions for trial on the merits.

OGG and STEVENS, JJ., concur.