Robert T. STROOP and wife, Mary H. Stroop, J. W. Robinson and wife, Callie M. Robinson, Claiborn J. Harrell and wife, Rebecca Bell Harrell, and Bobby Tarpley and wife, Reba C. Tarpley, suing Individually and on behalf of others similarly situated, Appellants,

v.

RUTHERFORD COUNTY, a Political Subdivision of the State of Tennessee, Ben Hall McFarlin, County Judge of Rutherford County, Tennessee, Ed Elam, County Court Clerk of Rutherford County, Tennessee, Allen J. Stockard, County Trustee for Rutherford County, Tennessee, and Homer Jones, Register of Deeds for Rutherford County, Tennessee, Appellees.

Supreme Court of Tennessee.

June 5, 1978.

Kenneth W. Snell, Murfreesboro, James M. Sykes, Nashville, for appellants; Joe K. Walker, Springfield, of counsel.

Larry K. Tolbert, Wm. T. Sellers, Murfreesboro, for appellees; Smith & Sellers, Murfreesboro, of counsel.

## OPINION

BROCK, Justice.

The plaintiffs bring this action on behalf of themselves and others similarly situated to recover payments of privilege taxes lev-

ied upon transfers of realty pursuant to an unconstitutional private act of the legislature, Chapter 172 of the Private Acts of 1969. Pursuant to the motion of the defendants, the trial court dismissed the complaint for failure to state a claim upon which relief could be granted. *See* Tenn.R. Civ.P. 12.02.

The sole ground asserted in the motion to dismiss was that:

"The complaint on its face shows that these plaintiffs failed to pay the transfer tax under protest, and thereby waived any and all right to refund of said money paid upon the act being declared unconstitutional at any future date."

The Chancellor did not sustain this ground but did grant the motion, stating:

"There having been no statement of facts presented to the court to show duress upon the part of the plaintiffs, nor to show involuntariness on the part of the plaintiffs, other than the conclusion of the pleadings, the court finds from the undisputed facts appearing on the face of the pleadings and as a matter of law that plaintiffs and each of them have failed to state a claim upon which relief can be granted."

This appeal, then, presents two questions:

(1) When a county, as distinguished from the state or a municipal corporation, exacts payment of a tax under an unconstitutional enactment, may the taxpayer recover such tax paid without a formal declaration of protest at the time of payment, provided, such payment is made involuntarily and under duress?

(2) If protest is not required, do the facts stated in the complaint in this case, constitute a sufficient allegation of duress?

I

We hold that a taxpayer need not make a formal protest at the time of payment in order to be entitled to recover county taxes illegally exacted.

The legislature has provided a statutory procedure for the recovery of state and municipal taxes which have been illegally exacted, T.C.A., §§ 67–2301 through 67–2313, but these statutes do not govern actions to collect county taxes illegally exacted; the taxpayer is left to resort to his common law remedies for recovery of county taxes paid.[1] *Holloway v. Putnam County,* Tenn., 534 S.W.2d 292 (1976); *Bell v. Clay County,* 168 Tenn. 6, 73 S.W.2d 685 (1934); *Little Rock and M. R.R. Co. v. Williams,* 101 Tenn. 146, 46 S.W. 448 (1898); *Cincinnati N.O. & T.P. R.R. Co. v. Hamilton County,* 120 Tenn. 1, 113 S.W. 361 (1908).

One of the statutory requirements for the recovery of taxes paid to a municipality or the state is that the taxpayer make formal protest at the time of payment of such taxes. T.C.A., §§ 67–2303, 67–2313. But, we must turn to the common law to determine whether protest at the time of payment is necessary in order for the taxpayer to maintain a suit for recovery of taxes paid to a county.

Although some of the older cases held to the contrary, the modern common law rule is that if the taxes in question were paid under compulsion or duress and not voluntarily it is not necessary that protest at the time of payment be shown in order for the taxpayer to maintain an action to recover such taxes. *Merchants Despatch Transportation Corp. v. Ariz. State Tax Commission,* 20 Ariz.App. 276, 512 P.2d 39 (1973); *Southern Service Company v. Los Angeles County,* 15 Cal.2d 1, 97 P.2d 963 (1940); *Howard v. Augusta,* 74 Me. 79 (1882); *Pere Marquette Ry. Co. v. Ludington,* 133 Mich. 397, 95 N.W. 417 (1903); *Atweel v. Zeluff,* 26 Mich. 118 (1872); *Koewing v. West Orange,* 89 N.J.L. 539, 99 A. 203 (1916); *Jaynes v. Heron,* 46 N.M. 431, 130 P.2d 29 (1942); *Mercury Mach. Importing Corp. v. City of New York,* 3 N.Y.2d 418, 144 N.E.2d 400 (1957); *Horgan v. Taylor,* 36 R.I. 232, 89 A. 1058 (1914); *State v. Akin Products Company,* Tex.Civ.App., 279 S.W.2d 409 (1955),

---

1. For a special exception, see T.C.A., § 67–933, which requires that public utilities and railroads protest payment of county, as well as state and municipal, taxes as a prerequisite to contesting validity of assessment of such taxes.

*aff'd,* 155 Tex. 348, 286 S.W.2d 110 (1956); *Swanton Village v. Town of Highgate,* 128 Vt. 401, 264 A.2d 804 (1970); *Great Northern Ry. Co. v. State,* 200 Wash. 392, 93 P.2d 694 (1939); Annot., 142 A.L.R. 1198 (1943); 72 Am.Jur.2d 342–43 *State and Local Taxation* § 1082 (1974); 84 C.J.S. 1286–87 *Taxation* § 638 (1954).

No published opinion of this Court appears to have decided this issue, although there are statements in some of the cases to the effect that protest at the time of payment is required in order for the taxpayer to maintain an action for recovery. Most of these statements appear in cases involving attempts to recover taxes paid to the state or to municipalities which, of course, by the terms of the statute, must have been paid under protest. The statements appear also in cases in which the contested issue was whether the taxes were paid as the result of duress or coercion, not whether payment under protest was a requirement.

■ Actions to recover taxes which have been illegally exacted and paid involuntarily under coercion or duress are in the nature of actions for money had and received, a form of restitution. *Holloway v. Putnam County, supra*; 72 Am.Jur.2d 340, *State and Local Taxation* §§ 1077, 1078 (1974). Of course, one may not have restitution of a sum of money voluntarily paid, whether for taxes or some other demand. *Id.* at § 1080. Accordingly, one who desired to later contest the legality of a payment which he was forced to make has often resorted to the technique of formally protesting at the time of making such a payment in order to facilitate the task of later proving that the payment was not made voluntarily. In other words, entering a protest at the time of payment is one means, but not the only means, of providing proof that the payment was involuntarily made. 66 Am.Jur.2d 1049, *Restitution and Implied Contracts* § 111 (1973).

We hold that if the taxpayer makes a payment of county taxes involuntarily and under duress, as discussed *infra,* he may maintain an action to recover the same, although he did not make formal protest at the time of payment.

## II

■ We now consider the question whether the complaint in this case sufficiently alleges that the taxpayers made their payments involuntarily and as the result of duress or coercion.

The tax in question was imposed by Chapter 172 of the Private Acts of 1969 which provided:

"Section 1. That there is hereby imposed in and for Rutherford County a special privilege tax upon all transfers of realty situated in Rutherford County in the amount of .3 of 1% of the consideration for said transfer in each and every case other than transfers to secure the payment of a debt or transfers to confirm a title already in the grantee. The incidents of this tax shall be upon the grantor only.

\* \* \* \* \* \*

"Section 3. That the County Court Clerk shall certify upon the face of each instrument of conveyance the payment of said tax and that said instrument shall not be received by the Register of Deeds for recordation until said certification appears thereon."

The complaint alleges that Chapter 172 of the Private Acts of 1969 is in violation of Article XI, Section 8, and Article I, Section 8, of the Constitution of Tennessee, in that, it is contrary to the general statutes of this State, T.C.A., §§ 67–4101 and 67–4102, Item S, and has been so declared by the Chancery Court for Rutherford County in a final decree in another case.

The complaint alleges that plaintiffs paid the taxes in question under duress and compulsion, in that, upon presenting themselves at the Rutherford County Register's office for the purpose of recording deeds to parcels of real estate located in Rutherford County which they had sold or purchased, they were

". . . thereupon advised and told that said deed or deeds would not be recorded and put of record by said Regis-

ter of Deeds unless and until the payment of the special realty transfer tax was made to the County Court Clerk and a certificate of payment of said special taxes was stamped thereon."

Plaintiffs further allege:

"Plaintiffs and others similarly situated were thereby compelled under duress to pay a special tax in order to protect their property interest by the recording of their deeds.

\* \* \* \* \* \*

". . . and that failure to pay said special tax would have resulted in possible loss of their statutory and constitutional rights to have the protection afforded by registration of said deeds."

In our opinion, these allegations sufficiently allege that the taxes in question were paid under duress and compulsion and not voluntarily. *Bell v. Clay County, supra.* See *Trower v. San Francisco,* 152 Cal. 479, 92 P. 1025 (1907); *New Smyrna Inlet Dist. v. Esch,* 103 Fla. 24, 137 So. 1 (1931); *Coleman v. Consolidated Realty Company,* 239 Ky. 788, 40 S.W.2d 387 (1931); *Malin v. La Moure County,* 27 N.D. 140, 145 N.W. 582 (1914).

It has been aptly said that the terms "voluntary" and "involuntary," when used with reference to the payment of taxes, are not applied in their ordinary sense. *Singer Sewing Machine Co. v. Teasley,* 198 Ala. 673, 73 So. 969 (1916); *Maxwell v. San Luis Obispo County,* 71 Cal. 466, 12 P. 484 (1886). Thus, with respect to the payment of taxes, it has been recognized that a payment may be voluntary although it is made unwillingly and, on the other hand, it is held that it is not necessary for the taxpayer to be subject to physical force or that his volition be actually overriden in order that a payment may be deemed involuntary. Annot., When May Payment of Tax or Assessment be Regarded as Involuntary or Made Under Duress, 64 A.L.R. 9, 11 (1930). It has been further recognized that the rules of contract law which are applied to determine whether a payment was made or an obligation incurred under duress do not properly apply to the payment of taxes. Thus, in

*Chicago v. Klinkert,* 94 Ill.App. 524, 527 (1901) the court said:

"Some confusion has, perhaps, arisen from the application of decisions in cases arising upon private contracts to the very different facts of payments of license fees or taxes illegally demanded. There would seem to be a clear distinction between the case of a contract between parties, where there is a consideration moving on each side, and it is sought to set aside the contract on the ground of duress, and the case of the payment of a tax or license fee to a municipality under the demand of a void ordinance."

■ Keeping in mind these precautions, we consider the general principles by which our decision must be determined. First, it is generally agreed that if a taxpayer pays an illegal tax demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity for making such payment at the time, such a payment must be deemed to be voluntary, and cannot be recovered back. *City of Memphis v. W. M. S. Co.,* 46 Tenn. App. 153, 326 S.W.2d 828 (1959); 72 Am. Jur.2d 343 *State and Local Taxation* § 1081 (1974).

"However, the trend is toward greater liberality in recognizing the implied duress under which payment of a tax is almost always made, and even when no seizure of the taxpayer's goods is imminent, if he is put at a serious disadvantage in the assertion of his legal rights in defending proceedings brought to collect the tax, justice may require that he be at liberty to avoid this disadvantage by paying promptly and bringing suit on his own side. He is entitled to assert his supposed right on reasonably equal terms." *Id.* at § 1080.

"In order for a payment of taxes to be deemed involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no reasonable means of

immediate relief except by making the payment. But, in order to render such a payment involuntary, it is not necessary that there be any technical duress, in the usual sense of the term. Rather, in determining whether a payment of taxes is voluntary or involuntary, the real question is whether there was such an immediate and urgent necessity for the payment as to imply that it was made under compulsion." *Id.* at § 1081.

*See also Union Pacific Railroad v. Dodge County,* 98 U.S. 541, 25 L.Ed. 196 (1879).

In *Bell v. Clay County, supra,* this Court said that:

"An illegal tax wrongfully collected by a county may be recovered, if paid under duress sufficient to create an urgent and immediate necessity. . . .

"The payment of a sum of money to avoid the hazard of a disproportionately larger sum is sometimes treated as an involuntary payment, made under duress, so that a suit to recover the sum paid may be maintained." 168 Tenn. at 8–9, 73 S.W.2d at 685–86.

The Court in the *Bell* case found that duress was sufficiently alleged, reciting the facts as follows:

"The case for the complainant is that his pending civil action to recover, on a contract obligation, a sum of money many times in excess of the tax involved was resisted on the ground that his claim arose from his exercise of a taxable privilege in Clay county, for which he had not paid the tax due to the state and county. Complainant knew that the county had not levied such a tax and believed that his payment of the state tax in another county entitled him to exercise the privilege in Clay county. However, his stake was so great he could not afford to risk his right to sue on his claim, and although the collecting officers of the state and county were completely passive, making no demand upon him, he paid double the tax, and penalties, as authorized by the revenue act, Pub. Acts 1931 (Second Extra Session), chapter 13, article 4, section 17. The payment was $690. The sum involved in the pending litigation was more than $5,000." 168 Tenn. at 7–8, 73 S.W.2d at 685.

Sufficient duress has also been found when administrators or executors were denied the right to file probate papers or secure testamentary letters unless they paid a fee imposed by an unconstitutional enactment, since payment under such circumstances was deemed to be involuntary. *Trower v. San Francisco, supra; Malin v. La Moure County, supra.*

We find that the decision of the Kentucky court in *Coleman v. Consolidated Realty Co., supra,* is the most persuasive authority which has come to our attention, for the reason that it involved an unconstitutional statute imposing taxes almost exactly like that involved in the instant case. The statute there was the Mortgage Recording Tax Act which levied a tax upon the privilege of having mortgages recorded and empowered the county clerk to refuse to record mortgages unless the tax was prepaid. We quote extensively from the *Coleman* case as follows:

"In *Middendorf v. Goodale, supra,* it was held that a recording officer would not be compelled to record a mortgage until the tax was paid. In the *Louisville Gas & Electric Company Case,* the Supreme Court said: 'It is said that it is a tax upon a privilege which the owner or holder of the instrument creating a lien is free to accept or reject. But for practical purposes there is no such option, for, as this court recently held, there is a practical necessity to record such instruments because, if not recorded, the statute overrides them in favor of purchasers without notice and creditors; and the choice is like one made under duress.'

"The substance of the Supreme Court's holding is that a mortgagee was placed by the state law under the compulsion of paying the recording tax or else losing the protection afforded by recording the mortgage. . . . The appellee could have refused to pay the tax and thus could have foregone the privilege of recording its mortgage, but by so doing it

would have lost the substantial value of its property for mortgage credit purposes. The mortgage would have been valid as between the mortgagor and mortgagee, but would have afforded the latter no protection against innocent purchasers for value or intervening lien holders without notice.

"In determining whether a payment of taxes is voluntary or involuntary, the real question is whether there was such an immediate or urgent necessity for the payment as to imply that it was made under compulsion. *Union Pacific Railroad Co. v. Dodge County,* 98 U.S. 541, 25 L.Ed. 196. In *State ex rel. McCardy v. Nelson,* 41 Minn. 25, 42 N.W. 548, 550, 4 L.R.A. 300, the register of deeds refused to receive a deed for a record until the taxes upon the land had been paid. A statute provided that he should not receive a deed for record until the auditor had certified that all taxes had been paid. The grantee in the deed tendered to the auditor the sum of $125.50 in payment of the taxes on the land and demanded a receipt. The tender and the receipt asked for were refused for the reason that an additional sum was not included in the tender, which sum was charged as a tax upon the property under a special act of the Legislature. It was claimed that this tax was illegal. Suit was brought to compel the auditor to accept the tender of $125.50. In holding that mandamus was not the proper remedy, but that the plaintiff should have paid the alleged illegal tax and brought suit to recover it back on the ground that it was paid under compulsion, the court said:

'The officer, of course, could not certify that the taxes were paid while this tax stood undischarged, and its validity undetermined. The register of deeds was prohibited by law from recording the deed until the fact of payment should be thus certified to him. The relator could not secure the recording of the deed by which she had acquired title to this land. If not recorded, she was liable, by force of our registry law, to be wholly divested of her title, either through a subsequent conveyance from her grantor to any innocent purchaser who might pay the tax, and place his deed on record, or through the recovery and docketing of judgments against her grantor. Such a possible result the relator was wholly powerless to prevent, except by the payment of the tax. The opportunity for her to interpose a defense to the tax in the tax proceedings, and to secure an adjudication as to its validity, would not occur for a considerable time after the conveyance to the relator, and almost always in such cases some interval must elapse between the time of the grant and the time when an adjudication could be secured upon that subject; and in the meantime the security of the title acquired must depend upon circumstances beyond the control of the grantee. The inducements which the law thus imposes upon a grantee of lands to pay a tax of inconsiderable amount, rather than to suffer his title to valuable lands to be thus jeopardized, may well be deemed to amount to compulsion. The coercion is certainly as real, and of substantially the same nature, as in the case of a distress of goods.

'Indeed, men of ordinary prudence would not generally hesitate to pay at once such a demand as is involved in this tax, rather than to incur the risk of losing their entire estates by not placing their deeds on record. Both upon the ground of reason and of authority such a payment, made under protest, should not be regarded as voluntarily made. The parties interested do not stand upon equal terms. The law, in effect, compels the payment.'

". . . Under the Mortgage Recording Tax Act, the mortgagee, in order to avail himself of the protection afforded by the recording act, was left no choice but to pay the recording tax. If the tax was not paid, he could not receive the benefit of the recording act and would incur the risk of losing his superior lien on the mortgaged property, at least, until

he had gone into the courts and established the invalidity of the Mortgage Recording Act.

"In a business such as the one engaged in by appellee, the mortgagee must be in a position to record its mortgages immediately in order to enable it to continue in business. Unless it was permitted to record its mortgages promptly, it would be unable to carry on its business. The action of the clerk, therefore, in refusing to record the mortgage until the tax was paid, as he was authorized to do in *Middendorf v. Goodale, supra*, amounted to duress, and the appellee in paying the tax acted under compulsion. If payment of an illegal tax is made under duress, it need not be paid under protest to entitle the payer to recover it back. On the other hand, in the absence of a statutory provision, a mere protest, of itself, does not render a payment of taxes involuntary. (Citations omitted.)

"It follows that the involuntary payment by appellee is recoverable under section 162 of our Statutes." 40 S.W.2d at 388–89.

■ The case at bar is essentially identical to that decided by the Kentucky court in *Coleman* and by the Minnesota court in *State ex rel. McCardy v. Nelson, supra*. We agree with the conclusion reached in each of those cases that illegal taxes paid in order to obtain registration and recordation of deeds or other instruments of conveyance of real estate are paid under duress and coercion, rather than voluntarily, thus entitling the taxpayer to maintain an action to recover such taxes. This conclusion is consistent with the principles announced in *Bell v. Clay County, supra*, that taxes wrongfully collected by a county may be recovered "if paid under duress sufficient to create an urgent and immediate necessity" and that "[t]he payment of a sum of money to avoid the hazard of a disproportionately larger sum is sometimes treated as an involuntary payment, made under duress, so that a suit to recover the sum paid may be maintained." 168 Tenn. at 9, 73 S.W.2d at 685–86. *See also* 72 Am.Jur.2d 342 *State and Local Taxation* § 1081 (1974).

Accordingly, we reverse the decree of the Chancery Court and remand this cause to that court for further proceedings consistent with this opinion. Costs are adjudged against appellees.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.