**BILL'S INSTITUTIONAL COMMISSARY CORPORATION, Plaintiff-Appellant,**

v.

**SHELBY COUNTY, a Political Subdivision of the State of Tennessee, Robert M. Gray, County Court Clerk of Shelby County, Tennessee, Riley C. Garner, County Trustee for Shelby County, Tennessee, and William C. Boyd, Assessor of Property for Shelby County, Tennessee, Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section.

May 14, 1979.

Certiorari Denied by Supreme Court
Aug. 13, 1979.

Marx J. Borod and Don M. Roman, Rosenfield, Borod, Bogatin & Kremer, P. C., Memphis, for plaintiff-appellant.

George T. Lewis, Jr., County Atty., Carl N. Stokes, Delinquent Tax Atty., Britton Lamb, Asst. County Atty., Memphis, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff sued to recover county property taxes paid on exempt tangible personal property for the years 1973–1977, inclusive.

Defendants filed a motion to dismiss the complaint, which the Chancellor sustained.

Plaintiff is a Mississippi corporation with a distribution facility in Memphis, Tennessee. It filed tangible personal property tax schedules, pursuant to T.C.A. § 67–620 for the tax years 1973 through and including 1977. Each year, plaintiff received a tax bill based on assessments calculated by the County Tax Assessor from the figures on the Tax Schedule. Plaintiff paid the tax bills, totaling $30,216.00, without formal protest.

Plaintiff is in the business of buying, selling, distributing, transporting, and merchandising wholesale grocery items primarily for institutional use. It asserts that all goods acquired or held by it are for resale purposes only. As such, plaintiff contends that this property constitutes inventory and is exempt from ad valorem taxation pursuant to T.C.A. § 67–5801.

In its complaint, plaintiff alleges:

6. On or about March 10, 1978, while undergoing a random audit of its Memphis facility, plaintiff was informed by an agent of the Shelby County Assessor's office that it appeared that plaintiff was erroneously paying a tax upon inventory located at the facility. Specifically, plaintiff was informed that it was being taxed upon merchandise listed in the 1977 Tangible Personal Property Tax Schedule as inventory, despite the fact that such property was exempt from assessment.

The defendants moved to dismiss on the grounds:

1. Plaintiff had not attempted to pursue administrative remedies pursuant to T.C.A. §§ 67–801—842;

2. Plaintiff had failed to pursue administrative remedies pursuant to T.C.A. §§ 67–2301—2313; and

3. The taxes were not paid under protest.

Subsequently, plaintiff obtained leave to amend to allege duress such as to make the tax payments involuntary.

Upon the Chancellor sustaining the motion to dismiss, the plaintiff appealed and assigned four (4) errors:

1. The Court erred in granting Defendants-Appellees' Motion to Dismiss for the reason that the Complaint alleged facts which, for purposes of the Motion, were admitted as true, and which, if true, would permit Plaintiff-Appellant to recover in this action.

2. The Court erred in ruling that Plaintiff-Appellant was required to pursue the administrative remedies provided within T.C.A. § 67–801, et seq., and T.C.A. § 67–2301, et seq., in order to pursue this action.

3. The Court erred in ruling that Plaintiff-Appellant was required to make a formal protest at the time of payment in order to maintain this action.

4. The Court erred in ruling that Plaintiff-Appellant did not pay the taxes in quesion [sic] under protest.

The resolution of two issues will dispose of these assignments:

(1) Must plaintiff exhaust the administrative remedies available before instituting suit?

(2) Did plaintiff come within the concept of paying its taxes "under protest?"

Title 67, Chapter 8 of Tennessee Code Annotated encompasses the statutory procedures for the review of assessments. This chapter was discussed in the case of *Rosewood, Inc. v. Garner*, 63 Tenn.App. 559, 476 S.W.2d 273 (1971). There, plaintiff corporation appealed from the decree of the chancery court which held that it was not entitled to tax-exempt status.

The taxing authorities had raised the jurisdictional question of whether plaintiff had to exhaust its administrative remedies before it could challenge the action in court. The taxing authorities asserted that T.C.A. § 67–801 gave the County Board of Equalization authority in these matters and, since its actions were reviewable by the State Board of Equalization pursuant to T.C.A. § 67–809, the taxpayer had to exhaust the administrative remedies available through the boards before seeking certiorari.

The court followed the precedent wherein taxpayers were not required to exhaust administrative remedies when claiming tax-exempt status. *See* e. g., *Nashville Labor Temple v. Nashville*, 146 Tenn. 429, 243 S.W. 78 (1921).

The court, in *Rosewood*, stated:

"After a review of the authorities the Chancellor made what we deem to be a proper distinction between this type of complaint pertaining to the right of an exempt status on the one hand, as distinguished from the complaint of the taxpayer that he has been grossly, fraudulently, or intentionally overvalued or discriminated against. In the latter type of complaint, the primary issue is the valuation of the property, and the Board, because of its presumed expertise in valuation, is best qualified to hear and correct any abuse suffered. Whereas, the first type of complaint (assessing exempt property) involves primarily questions of law, with the fact questions being incidental thereto, and renders the court the proper tribunal to hear and correct these abuses which are challenged as void assessments." *Id.*, 63 Tenn.App. at 567, 476 S.W.2d at 276.

Here, plaintiff is not asserting that it has been "grossly, fraudulently, or intentionally overvalued or discriminated against." Its issue is not with evaluation of the property but rather, like *Rosewood, Inc.*, it is concerned with the taxation of exempt property, although there is no issue as to either this property's classification as inventory or its exempt status.

Thus, the administrative remedy of appealing to the County and State Boards of Equalization pursuant to T.C.A. §§ 67–801 —842 would be an unnecessary step. Such a procedure would not invoke the "presumed expertise in valuation" of the boards. As per *Rosewood, Inc.*, the assessing of exempt property "involves primarily questions of law . . . and renders the court the proper tribunal to hear and correct these abuses."

In *Holloway v. Putnam County*, 534 S.W.2d 292 (Tenn.1976), the court discussed the remedies available for the recovery of county taxes.

There, a taxpayer brought suit to recover ad valorem taxes paid to the county and city under protest. The Chancellor sustained a motion to dismiss for failure to state a claim for which relief could be granted.

Plaintiff owned real estate which she had agreed to sell upon the condition that she pay all outstanding property taxes due. Under protest, she paid all the taxes due for the years 1936 through 1961 and sued to recover the sums paid.

In reversing, in part, as to the county taxes, the Supreme Court noted that T.C.A. § 67–2301 was enacted to provide an efficient and inexpensive remedy for taxpayers who are victims of *"errors and double assessments"* and thus taxes which were wrongfully collected. The Court stated that this is a permissive and alternate administrative remedy but neither mandatory nor exclusive. The Court continued:

"It provides an unacceptable remedy for a taxpayer whose taxes are tainted with the illegality of wrongful assessment or any form of invalidity which may not be processed on an administrative basis.

\*　\*　\*　\*　\*　\*

"We hold that a taxpayer has two remedies for the recovery of county taxes, viz.: (1) the administrative procedure provided under § 67–2301, T.C.A. and (2) payment under protest and a common law suit for recovery. Such a suit is in the nature of an action of assumpsit for money had and received and is governed by the six-year statute of limitation as set forth in § 28–309, T.C.A. The cause of action accrues and the statute begins to run on the date of payment of taxes under protest." *Id.* at 295.

Of import in *Holloway* is the requirement that the taxes be paid under protest as a condition precedent to a common law suit for recovery.

In *Fentress County Bank v. Holt*, 535 S.W.2d 854 (Tenn.1976), the plaintiff brought suit challenging the assessment on outstanding capital stock asserting that it should be assessed against the shareholders rather than the banking institution. The Chancellor sustained a motion to dismiss. In affirming, the court noted that none of the taxes in question had been paid under protest or otherwise.

In discussing *Holloway*, the court stated:

"The *Holloway* case, of course dealt only with the recovery of taxes previously paid. In addition to the two remedies referred to in that opinion, an aggrieved taxpayer also has the additional administrative remedy of challenging his assessment before the local board of equalization, with appeal to the state board of equalization, and ultimate judicial review in the courts, before payment of the taxes is required." T.C.A. §§ 67–801 et seq. *Id.* at 856.

Further, the court distinguished *Rosewood*:

"It should be noted, however, that in the *Rosewood* case the taxpayer had in fact paid the taxes under protest, and the suit was brought to recover these and to seek an injunction against future taxation. This sharply distinguishes that case from the case at bar, where no payment under protest has been made." *Id.*

The court continued:

"We believe that the *Rosewood* decision is a sound one, and that a taxpayer ought not to be required in all cases to go through boards of equalization or other administrative procedures in order to raise strictly legal issues. He may go

through these agencies, of course, without first paying his taxes. He should, however, be permitted access to the courts to raise purely legal questions, but only after he has first paid the taxes under protest.

"Accordingly, any earlier cases in this state, which may have permitted direct suits against county taxing authorities without first requiring payment of the taxes under protest, are now modified. A county taxpayer may follow the procedure approved in *Rosewood*, supra, pay his county taxes, and file suit to recover them, when he only seeks to present legal questions as to the validity of his assessment; or he may go through the equalization boards, challenging any aspect of his assessment, without first paying the disputed taxes.

"He may not, however, have access to the courts without first pursuing one or the other of these courses of procedure." *Id.* at 857 (footnotes omitted).

These cases require the following:

■ When one is claiming tax exempt status, administrative remedies pursuant to T.C.A. §§ 67–801—842 need not be pursued.

■ A taxpayer has two remedies for the recovery of county taxes:

(1) the administrative remedy pursuant to Chapter 23, or

(2) payment under protest and a suit for recovery.

■ A taxpayer can also challenge his assessment before the county and state boards of equalization. He may go through these boards first without paying the taxes. However, to allow direct access to the courts, the taxes must be paid under protest.

Plaintiff at bar paid all the taxes as they became due. Although it did not pay under formal protest at the time of remittance, it asserts that the circumstances were such as to constitute payment under protest.

Defendants have directed this court's attention to an unreported decision from the Eastern Section of the Court of Appeals, *Northshore Associates v. Knoxville*, filed February 16, 1979, at Knoxville.

There, plaintiff sued to recover city real property taxes alleging that they were illegally imposed. The complaint alleged that a 1977 ordinance increasing the tax rate resulted in an increased tax liability and an acceleration of the payment schedule, thus depriving plaintiff of the use of certain moneys paid to the city in violation of the charter.

The complaint was later amended to add that under the terms of a trust deed conveyance to plaintiff the trustees were entitled to institute foreclosure proceedings in the event that any of the taxes were not paid. Plaintiff alleged that such foreclosure would result in damages to it which were greater than the amount of the taxes involved. Therefore, since the payment of taxes were necessary to avoid the risk of foreclosure, the payment was made under duress and was involuntary.

On appeal, the court affirmed the Chancellor's finding that the complaint did not state a cause of action upon which relief could be granted but did so for reasons other than those assigned by the Chancellor.

Both the plaintiff and the defendant relied upon cases involving common law procedures in recovering county taxes. The requirement to maintain that action is expressed in *Stroop v. Rutherford County*, 567 S.W.2d 753 (Tenn.1978):

[I]f the taxpayer makes a payment of county taxes involuntarily and under duress . . . he may maintain an action to recover the same, although he did not make formal protest at the time of payment. *Id.* at 755.

The court, in *Northshore*, then determined that there are differing procedures between recovering county taxes as opposed to city taxes, citing *Holloway, supra*. Since the plaintiff had not followed the required statutory procedure for reclaiming city taxes paid, although paid under protest, the conditions precedent were not complied with. So, the case was properly dismissed, although for the wrong reasons.

In *Stroop, supra*, plaintiff brought an action to recover payment of privilege taxes

levied upon transfers of realty pursuant to an unconstitutional private act of the legislature. The court dismissed the complaint for failure to state a claim upon which relief could be granted.

One of the issues raised on appeal was:

When a county, as distinguished from a state or a municipal corporation, exacts payments of a tax under an unconstitutional enactment, may the taxpayer recover such tax paid without a formal declaration of protest at the time of payment, provided such payment is made involuntarily and under duress? *Id.* at 754.

The court held that a taxpayer does not need to make a formal protest at the time of paying taxes in order to be entitled to recover county taxes illegally exacted. It determined, in accordance with *Holloway, supra,* that T.C.A. §§ 67–2301—2313 does not govern actions to collect county taxes illegally exacted and that the taxpayer is left to resort to his common law remedies for recovery of taxes paid.

The court stated:

"Although some of the older cases held to the contrary, the modern common law rule is that if the taxes in question were paid under compulsion or duress and not voluntarily it is not necessary that protest at the time of payment be shown in order for the taxpayer to maintain an action to recover such taxes." *Id.* at 754.

The court reasoned that an action to recover illegally exacted taxes paid involuntarily under coercion or duress is in the nature of actions for money had and received, a form of restitution. Since one may not have restitution of a sum of money voluntarily paid, the practice of paying under protest arose. The paying under protest at the time of payment is not the only means of providing proof that the payment was involuntarily made.

Duress in *Stroop* involved the refusal of the County Register's office to record deeds until the privilege tax was paid. Therefore, the duress was such as it was necessary to pay the illegal tax to gain the protection of the recording statutes.

In determining when a tax payment is voluntary, the court stated:

"First, it is generally agreed that if a taxpayer pays an illegal tax demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity for making such payment at the time, such a payment must be deemed to be voluntary, and cannot be recovered back." *Id.* at 756.

Quoting from 72 Am.Jur.2d 343, *State and Local Taxation,* § 1081 (1974), the court recognized:

" 'However, the trend is toward greater liberality in recognizing the implied duress under which payment of a tax is almost always made, . . ., if he is put at a serious disadvantage in the assertion of his legal rights in defending proceedings brought to collect the tax, justice may require that he be at liberty to avoid this disadvantage by paying promptly and bringing suit on his own side. * * * Id.* at § 1080.

" 'In order for a payment of taxes to be deemed involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no reasonable means of immediate relief except by making the payment. [I]n determining whether a payment of taxes is voluntary or involuntary, the real question is whether there was such an immediate and urgent necessity for the payment as to imply that it was made under compulsion. Id.* at § 1081.' " *Id.* at 756–57.

The court held:

"[T]axes wrongfully collected by a county may be recovered 'if paid under duress sufficient to create an urgent and immediate necessity' and that '[t]he payment of a sum of money to avoid the hazard of a disproportionately larger sum is sometimes treated as an involuntary payment, made under duress, so that a suit to recover the sum paid may be maintained.' " *Id.* at 759.

In order to have direct access to the courts in the matter at bar, it is necessary that the plaintiff establish that it involuntarily paid the taxes under compulsion or duress.

The plaintiff, during the course of pleadings, was allowed to amend and added the following paragraph to its complaint.

Before making the initial return aforementioned, plaintiff, acting through its agents, contacted the Shelby County Assessor or his representative, explained the nature of its business, and, as a newcomer to the city sought direction as to its liability for such taxes. Plaintiff was advised that it must abide by the assessment as made by the Shelby County Assessor, and if it failed or refused to do so, it would be subjected to penalties and other proceedings all of which will be shown in detail at the hearing of this cause. Plaintiff avers that this conduct and other conduct which will be shown upon the hearing constituted sufficient duress as to create an involuntary payment, recoverable by this action.

This allegation does not reveal whether the discussion with the county officials involved the pointed issue of the exempt inventory or the entire assessment package in general. In and of itself, the complaint does not contain a sufficient allegation of duress.

What the plaintiff asserts is that the statutory penalty for failure to pay one's tangible personal property tax is in and of itself such as to constitute involuntary payment by duress and coercion. To acknowledge such an allegation would be to destroy any efficacy of administrative remedies. For in effect, every taxpayer is liable to such penalties and thus every taxpayer would be paying under duress sufficient to avoid any payment under formal protest. The results would be to open the courts to each and every complaint of all taxpayers concerning their tax payments.

It is of concern to this court whenever a taxpayer has paid a tax to which a government entity is not entitled. On its face the inequity appears obvious should the county, in this instance, be allowed to retain funds wrongfully obtained. Under the remedies available pursuant to *Holloway* and *Fentress*, plaintiff is foreclosed from attacking these payments in court without first exhausting its administrative remedies because it failed to formally protest the payment.

In its brief, plaintiff alleges, without any clarification as to the content of the discussion, that:

Because Plaintiff-Appellant was unfamiliar with the tax laws of the State of Tennessee, having just opened its Memphis facility in 1972, Plaintiff-Appellant contacted the Shelby County Assessor's office to explain the nature of its business and to be advised as to the nature of its liability for taxes.

In effect, plaintiff alleges that it paid the taxes in question because of ignorance of the law and/or improper advice from the assessor's office. Neither of these grounds would be sufficient to raise protest by duress, coercion or otherwise.

The Chancellor properly sustained the motion to dismiss. Costs are taxed to plaintiff.

MATHERNE and NEARN, JJ., concur.